John E. Flaherty
Ravin R. Patel
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

*Of Counsel:*

Raymond A. Kurz
Anna Kurian Shaw
Hogan Lovells US LLP
555 Thirteenth St. NW
Washington, D.C. 20003
(202) 637-5600

*Attorneys for Plaintiffs,*
*Merck & Co., Inc., and*
*Merck Sharp & Dohme Corp.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCK & CO., INC., and<br>MERCK SHARP & DOHME CORP.,<br><br>                    Plaintiffs,<br><br>v.<br><br>MERCK KGAA<br><br>                    Defendant. | CIVIL ACTION NO.:<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, UNFAIR COMPETITION, FALSE ADVERTISING, DECEPTIVE TRADE PRACTICES, CYBERSQUATTING AND BREACH OF CONTRACT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively, referred to as "**Plaintiffs**" or "**Merck**"), by its attorneys, allege for their Complaint against Defendant Merck KGaA (referred to as "**Defendant**" or "**KGaA**") the following:

### Nature of Action

1.      In this action, Plaintiffs assert both federal and state causes of action based on Defendant's deliberate and unauthorized use of MERCK as follows: (a) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (b) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (c) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (d) trademark infringement under N.J. Stat. § 56.3-13.16; (e) trademark

dilution under N.J. Stat § 56:3-13.20; (f) unfair competition under N.J. Stat. § 56.4-1; (g) unfair competition under New Jersey common law; (h) false advertising in violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B); (i) deceptive trade practice under N.J. Stat. § 56.8-2; (j) cybersquatting in violation of the Anticybersquatting Consumer Protection Act 15 U.S.C. §1125(d); and (k) breach of contract. Plaintiffs seek damages and injunctive and other relief against Defendant for its willful and unlawful activities as alleged in greater detail below.

### Parties

2.       Merck Sharp & Dohme Corp., a U.S. corporation organized under the laws of New Jersey having its place of business at One Merck Drive, Whitehouse Station, NJ, 08889-0100, manufactures and sells pharmaceutical products (referred to hereafter as "**Merck Sharp & Dohme**").

3.       Merck & Co., Inc. is a U.S. corporation organized under the laws of New Jersey having its place of business at 2000 Galloping Hill Road, Kenilworth, NJ 07033 (referred to hereafter as "**Merck & Co., Inc.**"). Merck Sharp & Dohme is a wholly-owned subsidiary of Merck & Co., Inc.

4.       Upon information and belief, Defendant Merck KGaA, a German corporation, having a place of business at Frankfurter Str. 250, 64293, Darmstadt, Germany, manufactures and sells chemical and pharmaceutical products.

### Venue and Jurisdiction

5.       This is an action for federal and state trademark infringement, trademark dilution, unfair competition, false advertising and deceptive trade practices under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.* ("**Lanham Act**") and/or the laws of the State of New Jersey;

2

cybersquatting under the Anticybersquatting Consumer Protection Act 15 U.S.C. §1125(d); and breach of contract.

6.      This Court has subject matter jurisdiction of this action under the trademark laws of the United States, 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1332(a) and 1338(a).

7.      This Court also has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to the claim occurred in this District and § 1391 (c) because, upon information and belief, Defendant is not a resident of the United States.

9.      Upon information and belief, Defendant has advertised, promoted, distributed, offered to sell and/or sold its products in this District and has made unauthorized use of MERCK as set forth below in this District.  Additionally, Defendant's predecessor entered into a contract with Merck Sharp & Dohme's predecessor, as described in more detail below.

**History & Background**

10.     Although Plaintiffs and KGaA share a common heritage, they are and have been unrelated entities for nearly a century. In 1668, their common predecessors, members of the Merck family, founded a business that would later expand into the United States. The U.S. business was organized as Merck & Co. in 1891 ("**Merck & Co.**"), subsequently incorporated as Merck & Co. in 1908 and reorganized as Merck & Co., Inc. in 1927. 1/ Merck Sharp & Dohme is a successor in interest to Merck & Co. which was initially organized in 1891.

---

1/      This entity is a different entity than Plaintiff Merck & Co., Inc. and no longer exists today.

3

11.     In 1917, during World War I, the U.S. government seized Merck & Co. stock owned by German interests. This stock was later purchased by George Merck, a U.S. citizen, in 1919. Thus, since at least World War I, Merck Sharp & Dohme (and its predecessor entities) and KGaA (and KGaA's predecessor entities) have been separate and independent companies. Through the years, the parties have entered into coexistence agreements (collectively referred to herein as the "**Coexistence Agreements**" and each a "**Coexistence Agreement"**) which, among other things, set forth what each company can and cannot do in various jurisdictions around the world regarding use of MERCK.

12.     A Coexistence Agreement was entered into in 1955 between Merck & Co., Inc. of Rahway, New Jersey, 2/ and Emanuel Merck offene Handelsgesellschaft of Darmstadt, Germany, and such was later replaced by a 1970 Coexistence Agreement between Merck & Co., Inc. of Rahway, New Jersey, 3/ and E. Merck of Darmstadt, Germany, which contained many of the provisions in the 1955 Coexistence Agreement.  KGaA is a successor of E. Merck and bound by the Coexistence Agreements. Merck Sharp & Dohme is also bound by and entitled to the rights under the Coexistence Agreements. As the parent company, Merck & Co., Inc. is an affiliate of Merck Sharp and Dohme and is also bound by and entitled to the rights under the Coexistence Agreements.

13.     The 1970 Coexistence Agreement allowed for E. Merck's use of "E. Merck" as all or part of a "firm-name or corporate name" in the United States, provided such names are geographically identified with Germany as follows: "E. Merck, Darmstadt, Germany" all words being given equal prominence. The 1970 Coexistence Agreement also provided that E. Merck would not use the trademark MERCK in the United States and Canada or attempt to acquire

---

2/        *See supra* note 1.
3/        *See supra* note 1.

4

rights in any trademark containing MERCK in the United States and Canada and acknowledged Merck & Co., Inc.'s 4/ exclusive rights to use the MERCK trademark in the United States and Canada. Attached as **Exhibit A** is the 1970 Coexistence Agreement.

14.     Over the years, disagreements have arisen between the parties relating to their respective uses of MERCK on the internet and otherwise in different jurisdictions and the parties have had a continuing dialogue which raised and, in certain instances, addressed such issues. Certain matters were not resolved between the parties and KGaA initiated litigation against Merck and related entities in 2013 in the United Kingdom, Germany and France.

15.     On December 17, 2015 the Paris Court of First Instance issued a judgment finding that certain of the accused activities by companies related to Merck did not constitute infringement and unfair competition while other accused activities were found to infringe ("**French Decision**").  On January 15, 2016, the English High Court issued a judgment finding that Merck had breached the 1970 Coexistence Agreement and infringed KGaA's trademark rights as a result of certain activities directed towards the United Kingdom ("**UK Decision**") based on use of the word MERCK on promotional and information activity (such as offering jobs, attracting innovators or suppliers).  As noted in the UK Decision, such finding was not based on Merck's use of the sign MERCK in connection with the sale of products or any material pharmaceutical business transacted in the United Kingdom, as Merck has not engaged in such uses in the United Kingdom. Merck now brings this action based on KGaA's activities in the U.S. as set forth herein.

16.     One of the issues that has not been resolved between the parties is the extent to which use of "Merck KGaA" would be made in the United States. Until recently, use of the Merck KGaA

_____

4/     *See supra* note 1.

name has not been specifically directed to the United States and/or has not been used in connection with business activities that are in direct competition with Merck in the United States.

17.      Recently, KGaA has been making ubiquitous use of "Merck KGaA, Darmstadt, Germany," "Merck KGaA" and "MERCK" as a prominent feature of its branding in the United States, including use on websites which are specifically targeted to users in the United States (despite KGaA claiming that its operating companies in the United States today purportedly operate under the trade name "EMD") as well as on social media sites that are more broadly accessible, including in the United States.

18.      KGaA has also recently engaged in other acts as part of a systematic pattern of behavior which is increasingly disruptive and damaging to Merck's exclusive rights in the MERCK trademarks and trade name in the United States.  KGaA has taken a new direction and refocused its efforts on becoming a major player in the U.S. market, including specifically in the immuno-oncology field where it directly competes with Merck, a well-recognized leader in that field.

19.      In 2013, Stefan Oschmann, then head of pharmaceuticals for KGaA (and a former long-term employee and executive of Merck Sharp & Dohme, its predecessors and/or affiliate(s)), stated that the U.S. was viewed as an emerging pharmaceutical market for KGaA and that the company was focusing on investing in its U.S. pharmaceutical business and developing new products to be offered directly by KGaA in the U.S.  This was a departure for KGaA, as previously its pharmaceutical products in the United States were offered through "alliances" with other companies. *See* attached as **Exhibit B** an article entitled "Merck KGaA's Oschmann Sees U.S. as New Emerging Market".

20.      Not surprisingly, this marked change in KGaA's business strategy, presence and growth in the United States and focus on immuno-oncology therapies has amplified the likelihood of

confusion with Merck and has recently resulted in significant actual confusion, as set forth herein.

21.     Further exacerbating such likelihood of confusion, on information and belief, KGaA has engaged in an intentional, increasing and continuous effort to undermine Merck's rights and renown in the United States and to establish itself as "THE" Merck or the "ORIGINAL" Merck in the United States.

22.     For example, KGaA recently launched a self-promotion campaign on websites directed to the United States dubbing KGaA as the "Original Merck" and featuring KGaA's U.S. employees declaring their pride in working for the "ORIGINAL" Merck.

23.     KGaA has also recently launched a "Smarter, Together" campaign through which KGaA purports to have been doing business in the U.S. for over 125 years. KGaA's statements are, however, false because KGaA has not been doing business in the U.S. for that period of time. Rather, it is Merck Sharp & Dohme and its predecessors that have operated continuously in the United States for over 125 years, and built tremendous goodwill and recognition through such operations.

24.     Indeed, on its own U.S. directed website, KGaA concedes that in 1917, Merck & Co. was a separate and independent company; that in 1945, KGaA lost its subsidiaries abroad; and that only in 1971 did KGaA "re-establish" itself in the U.S. market. *See* KGaA Corporate History page attached as **Exhibit C**.  This self-described timeline makes KGaA's statement that it has been doing business in the United States for over 125 years literally false and/or misleading.

25.     KGaA has also recently launched a rebranding initiative, including on KGaA's U.S. targeted websites. In describing the impetus for the rebranding, KGaA's CEO, Karl-Ludwig Kley, stated, "We want to be recognizable and remain visible as Merck <u>worldwide</u>" (*emphasis*

*added*).  *See* paragraph 52 below. KGaA's desire to be known as "Merck worldwide" includes the United States which is the largest consumer market in the world.

26.     These activities and others, as described in detail below, demonstrate KGaA's intent to use MERCK as a brand or trademark and trade name in the United States in violation of Merck's exclusive rights in the MERCK Marks and Trade Names (as defined below), to disregard its contractual obligations under the Coexistence Agreements, to mislead consumers in the United States and to usurp and dilute the goodwill associated with the MERCK trademark and trade name.

**Merck Marks and Trade Names**

27.     Merck has expended significant resources building the MERCK brand and as a result has acquired significant goodwill in the MERCK trademark and other trademarks containing the term Merck and the MERCK trade name and trade names containing the term Merck, including federal and common law rights as described below in paragraphs 28 through 29 (collectively, referred to herein as the "**MERCK Marks and Trade Names**").  Indeed, the MERCK Marks and Trade Names are ubiquitous in the pharmaceutical field in the United States.

28.     Merck Sharp & Dohme holds significant common law and statutory rights in the United States for the distinctive mark MERCK in connection with pharmaceutical products by virtue of long and extensive use and federal registration as pleaded hereinafter.  The MERCK trade name has also been used for over a century in the United States by Merck and related companies.

29.     Merck Sharp & Dohme is also the owner of a number of other trademarks and trade names consisting of or including the word "MERCK," including "MERCK," "MERCK & Design," "MERCK ACADEMY," "THE MERCK MANUAL," and "MERCK ONCALL." Various federal registrations owned by Merck Sharp & Dohme for marks containing the term

MERCK, many of which have achieved incontestability, are set forth in the chart below (collectively referred to herein as the "**MERCK Registrations**").

| Mark | Goods & Services | Filing Date | Registration Date | Registration Number |
|------|------------------|-------------|-------------------|---------------------|
| MERCK Stylized | Antiparasitics, cerebral depressants, depressants, motor depressants | 10/21/1915 | 02/15/1916 | 108566 |
| MERCK | full line of pharmaceuticals | 11/26/1996 | 06/30/1998 | 2169031 |
| MERCK ACADEMY | educational services, namely, a website providing scientific educational programs in the field of medicine and healthcare | 06/02/2010 | 12/28/2010 | 3897458 |
| MERCK ACADEMY and Design | Educational services, namely, a website providing scientific educational programs in the field of medicine and healthcare | 10/11/2010 | 04/05/2011 | 3940965 |
| MERCK ONCALL | providing medical and pharmaceutical information | 07/30/2001 | 02/11/2003 | 2687358 |
| MERCKVACCINES. COM | Telephone and on-line ordering services featuring vaccines<br><br>Providing information in the medical and health care fields | 05/21/2001 | 10/29/2002 | 2644267 |
| THE MERCK MANUAL | prints and publications, namely, series of books in the field of science and medicine | 08/20/1998 | 02/01/2000 | 2313554 |

| Mark | Goods & Services | Filing Date | Registration Date | Registration Number |
|------|------------------|-------------|-------------------|---------------------|
| THE MERCK VETERINARY MANUAL | prints and publications; namely, series of books in the field of science and medicine | 08/20/1998 | 02/01/2000 | 2313555 |

30.　　Merck Sharp & Dohme's incontestable registrations for these marks constitutes conclusive evidence of: (a) the validity of the registration for the marks; (b) Merck Sharp & Dohme's ownership of the marks; and (c) Merck Sharp & Dohme's exclusive right to use the marks in commerce on or in connection with the goods and/or services specified in the registration. 15 U.S.C. §§ 1057 (b) and 1115 (a).

31.　　Merck continues to use the MERCK Marks and Trade Names in the United States with various pharmaceutical products, as well as related goods and services.

32.　　The MERCK Marks and Trade Names are well-known in the United States as a result of extensive and widespread sales and promotional efforts in relation to the various innovative medicines, vaccines, and animal health products, and other products and services offered in association with these marks and names.

33.　　In 2013, seven of the pharmaceutical products offered by Merck were in the top 100 drugs by U.S. sales. *Fortune* magazine ranked Merck the 5th Most Admired Company within the Pharmaceutical Industry on its 2015 list of the World's Most Admired Companies.  Merck was also awarded the Prix Galien USA Award for the Best Biotechnology Product of 2015, KEYTRUDA®, the company's immuno-oncology product. This latest award for KEYTRUDA® is Merck's seventh Prix Galien USA award in nine years. The company was previously recognized for ZOSTAVAX® (Zoster Vaccine Live) (2013), VICTRELIS® (2012), ROTATEQ® (2010), ISENTRESS® (2008), and JANUVIA® and GARDASIL® (2007).  In

addition, Corporate Responsibility Magazine named Merck to its 2015 fifteenth annual ranking of the 100 Best Corporate Citizens among leading public companies in the U.S., placing Merck in the No. 27th spot.

34. As a result of Merck's continuous use, advertising and promotion, *inter alia*, the MERCK Marks and Trade Names have acquired significant goodwill in the United States and, indeed, are famous.

### KGaA's Unauthorized and Infringing Uses of MERCK

35. Upon information and belief, KGaA is a manufacturer and exporter of chemical and pharmaceutical products ("**KGaA Goods**") distributed in the United States, including in New Jersey, and works through its affiliates, including EMD Millipore, EMD Serono and Sigma-Aldrich Corporation, to distribute KGaA Goods in the United States.

36. Under the 1970 Coexistence Agreement, KGaA is authorized to use "**E. Merck**" as all or part of a firm-name or corporate name provided such firm-name or corporate name is geographically identified with Germany as follows: "**E. Merck, Darmstadt, Germany**" all words being given equal prominence (*emphasis added*).

37. But KGaA has instead undertaken to use a trade name in the United States that consists solely of the term MERCK followed by a generic entity type designation (i.e., a KGaA or Kommanditgesellschaft Auf Aktien, German for "limited partnership on shares; business entity"). KGaA's uses  of "MERCK,"  "Merck KGaA" and/or "Merck KGaA, Darmstadt, Germany"  as set forth herein, have not been agreed to as permissible by Merck under the 1970 Coexistence Agreement which only agrees to use of "E. Merck, Darmstadt, Germany" as a firm-name or corporate name.

38.     Upon information and belief, KGaA uses the trade name "Merck KGaA" not to merely identify the German entity organized under that corporate name but instead to associate MERCK, which carries with it the goodwill associated with Merck in the United States, with KGaA's U.S. operations (even though KGaA's U.S. operating companies purportedly use trade names containing the term EMD not MERCK).

39.     In fact, KGaA's use of the designation "Merck KGaA" and its reference to itself simply as MERCK has become so prominent and widespread that its use of MERCK KGaA is intended to and functions as a cornerstone of its U.S. branding.  In this way, KGaA's prominent use of MERCK functions as a trademark, in addition to a trade name, and constitutes, *inter alia*, trademark infringement, dilution and unfair competition.

40.     Through this and other activities, KGaA holds itself out to be MERCK (and indeed the "Original" MERCK) thereby infringing and diluting the distinctive quality of the MERCK Mark and Trade Names. Further, KGaA's false statements and unauthorized uses of MERCK constitute false advertising and breach of the 1970 Coexistence Agreement.

### *Unauthorized Uses of MERCK on the Internet*

41.     Merck has identified numerous unauthorized uses of MERCK by KGaA in the United States and on many occasions Merck has notified KGaA of such uses. Although KGaA has, in certain instances removed particular identified unauthorized uses, new unauthorized uses continue to be made, including, for example, unauthorized uses of MERCK on KGaA-owned websites located at www.emdgroup.com and www.emdmillipore.com. Examples of such uses are discussed in further detail below.

42.     On information and belief, KGaA owns and operates websites located at the domain names www.merckgroup.com and www.emdgroup.com.  Both these domain names are also

owned by KGaA. A user in the U.S. accessing the website located at www.merckgroup.com will be re-directed to the www.emdgroup.com website through means of geo-blocking. Additionally, the www.emdgroup.com site is targeted to users in the U.S. through content on the site.  As such, the www.emdgroup.com website is specifically targeted to users located in the United States. On information and belief, KGaA began targeting this website to users in the United States in 2013.

43.    In 2015, KGaA, on its U.S. targeted www.emdgroup.com site, discusses its new branding, namely the MERCK branding, in the United States next to the statement, "We are Merck."



44.     The home page for the www.emdgroup.com site also features the new branding and other unauthorized and infringing uses of MERCK as depicted below. This prominent usage of MERCK on a U.S. targeted website used to promote KGaA's goods and services in the United States is especially likely to cause confusion with Merck when used in conjunction with references to KGaA as the "Original" and other infringing uses of MERCK as depicted below.



45.     The Merck Builds Change brochure which promotes KGaA's opening of an innovation center and is available on the U.S. targeted www.emdgroup.com site also features unauthorized and infringing uses of MERCK, and includes contact information for comms@merckgroup.com, as depicted below.



# Merck Builds Change.
# And a Change of Thinking.



## Merck – Living Innovation.

Merck is a leading company for innovative and top-quality high-tech products in healthcare, life science, and performance materials. Around 39,000 employees work in 66 countries to improve the quality of life for patients, to foster the success of customers, and to help meet global challenges. In 2014, we generated sales of € 11.3 billion with our three business sectors.

Never stop learning. That's the only way. To this day, we derive our power to grow from the balance between the old and the new, between tradition and innovation. The Merck Way – or the secret of how a company has managed to remain successful in the marketplace even after more than 340 years – is based on three principles: Sustain. Change. Grow.



46.     An online supplier manual also available on the U.S. targeted www.emdgroup.com site features unauthorized and infringing uses of MERCK, as depicted below:



47.     Screenshots of the home page from the U.S. targeted www.emdgroup.com site and other pages appearing on the site also prominently featured infringing uses of MERCK and statements regarding KGaA being the "Original".







48.     Screenshots of the Consumer Health page from the U.S. targeted www.emdgroup.com site also prominently features infringing uses of MERCK and trademarks containing MERCK in the promotion of KGaA's product SedalMerck®, as depicted below.   The term SedalMerck is followed by a trademark registration symbol.





49.     On information and belief, KGaA also owns and operates the website located at the domain name www.displayingfutures.com which is accessible to users in the United States and contains content related to U.S. specific activities. This domain name www.displayingfutures.com is owned by KGaA. This website promotes a 2015 symposium that was held in the United States and includes unauthorized use of MERCK alone as depicted below.



***Unauthorized Uses of MERCK on Social Media***

50.    KGaA has also made unauthorized uses of MERCK on social media. For example, KGaA's YouTube channel, Facebook and Twitter pages are each accessible in the United States and feature prominent use of MERCK as shown below.





*Unauthorized Uses of MERCK in Press Releases Directed to U.S. Consumers*

51.     KGaA has also recently issued numerous press releases directed to U.S. consumers which contain prominent unauthorized uses of MERCK and which not surprisingly have caused considerable confusion.

52.     For example, KGaA issued a news release available on the U.S. facing website, www.emdgroup.com, titled "Merck Brand Relaunched."  The press release is directed to a U.S. audience and prominently features unauthorized uses of MERCK.  Indeed, the title of the article explicitly acknowledges that KGaA is relaunching its MERCK trademark (or "brand") and goes on to note that it wants to be known as MERCK worldwide so as to strengthen its well-known brand name.



53.     Another KGaA news release directed to a U.S. audience prominently featured unauthorized uses of MERCK in a description of KGaA's placement of a U.S. bond as shown below.  It is notable that in the news release, relating to a U.S. bond, the CFO of KGaA is quoted as saying "MERCK is an attractive name for investors also outside of Europe."



54.     Another KGaA news release also directed to a U.S. audience featured unauthorized uses of MERCK and described KGaA's push to "Accelerate Presence in Immuno-Oncology", a field in which it is attempting to compete directly with Merck, as shown below.  As noted in the KGaA news release, the activities "accelerate Merck's entry into the U.S. oncology market."



***Unauthorized Uses of MERCK at Conferences and Presentations***

55.   Upon information and belief, a booth at a 2015 Salesforce conference in New York prominently featured unauthorized uses of MERCK.  KGaA employees at the booth referred to themselves as "U.S. Merck" or "Merck". The conference keynote presentation included a video promoting a KGaA "Merck Companion App." Exemplary unauthorized uses of MERCK from the conference are depicted below.





56.     At another Salesforce conference in New York a large banner was displayed prominently featuring an unauthorized use of MERCK associated with KGaA.  Such use is particularly concerning as the background color of the banner is virtually the identical shade of green used in connection with Merck's corporate logo as depicted in paragraph 80 below.



57.    A 2015 Salesforce conference in San Francisco also prominently featured unauthorized uses of MERCK as depicted below and certain of the uses featured the same shade of green as Merck's corporate logo.



58.     Inese Lowenstein, a KGaA employee, participated in a welcome address at a Harvard University conference in Chicago, Illinois, and was introduced in the promotional materials as "Executive Vice President, Merck KGaA" and former "Head of Merck's Pigments & Cosmetics business unit".

59.     Additionally, KGaA promoted its participation and presentation at the 2016 JP Morgan Healthcare Conference in San Francisco, California on KGaA's Twitter page using the hash tag MERCK, as depicted below, and referring to its presentation as the "#Merck-presentation" in multiple tweets. Merck was also participating and presenting at the same conference which made KGaA's unauthorized use of MERCK in connection with the conference all the more likely to result in confusion.





*Unauthorized Use of MERCK on Products*

60.     The EMD Millipore website which on information and belief is owned and operated by KGaA, is specifically directed to U.S. users and located at the domain name www.emdmillipore.com, also owned by KGaA, and demonstrates that KGaA is currently offering and has offered goods in the United States under marks which contain the term MERCK and/or which are confusingly similar to the MERCK Marks and Trade Names.  Examples of such unauthorized and infringing uses on this website include use of the mark MERCKOGNOST (which appears followed by the ® symbol used to identify registered trademarks) and MRCK PROTEIN as shown below.

32



## KGaA's Intends to Create Confusion

### *KGaA's Original Campaign*

61.     KGaA has encouraged employees at all levels, including those in the U.S., to promote KGaA as the "Original" as shown below on the screenshots from KGaA's U.S. facing website located at www.emdgroup.com and its www.theoriginal.company website, also intended for the United States.





62.    Senior personnel from KGaA have also perpetuated this misleading notion that KGaA is the "Original Merck" in presentations and interviews in the United States, as illustrated by an interview with Karl-Ludwig Kley, Chairman of the Executive Board of KGaA in the USA on September 22, 2014, in which he stated, "Well, before turning to answer your question let me say this. We are currently in the United States, so whenever I refer to Merck, which is my company, I mean Merck KGaA, Darmstadt, Germany. The Original Merck." Attached as **Exhibit D** is a transcript of this interview.

63.    Upon information and belief, personnel for KGaA and/or its U.S. operating companies introduced themselves at a 2015 Bio-Pharma Sustainability Conference as the "Original Merck" and then referred to Merck as KGaA's "younger brother/sister" suggesting some affiliation where there is none.

64.    The acts by Defendant as described above, evidence, *inter alia*, KGaA's concerted attempt to not only confuse consumers into believing that Defendant and its goods and services

are produced by or otherwise associated with Merck whose famous MERCK trademark has obtained an iconic status over decades of continuous use, but also dilute the distinctive quality of the MERCK trademark in the United States.

### *KGaA's False and Misleading 125 Years Campaign*

65.     As discussed above, KGaA has started an advertising campaign which centrally features the false statement "125 Years in the U.S." ("**The 125 Years Campaign**"). Not only is this statement literally false and misleading, given that by its own admission KGaA did not re-enter the U.S. market until 1971, but such campaign is accompanied by prominent unauthorized uses of MERCK as depicted below.



66.     The false statement "125 Years in the U.S." suggests that KGaA has been operating in the United States for over a century, when in fact, it is not KGaA who has such a long-established presence in the United States, but, instead, Merck.

67.     Such statement is likely to deceive consumers as to KGaA's history in the United States and trades off of the good will associated with Merck, through lessening such goodwill and its association with Merck.

36

68.     KGaA ran an advertisement for The 125 Years Campaign at the 2015 BIO International Convention in Philadelphia, which, upon information and belief, hosted 20,000 attendees and at which KGaA also had a booth. The KGaA ad prominently featured the false and misleading statement, "125 Years in the U.S.," and featured infringing and unauthorized use of MERCK as shown below.



69.     KGaA also ran a false and misleading advertisement for The 125 Years Campaign in the Washington Post, claiming that KGaA has executed a "great business strategy" for 125 years and that KGaA has "been asking [questions] relentlessly for 125 years here in the US" as depicted below (emphasis added).



***KGaA's Registration of Infringing Domain Names***

70.     KGaA has registered domain names that are virtually identical to Merck's trademark registration for THE MERCK MANUAL.  KGaA has registered the following domain names: www.merckmanual.jobs, www.merckmanuals.jobs, www.merck-manual.jobs, www.merck-manuals.com, www.merckmanual.org, www.merck-manual.adult, www.merck-manual.porn, www.merckmanual.adult, www.merckmanual.porn, www.merck-manuals.adult, www.merck-manuals.porn, www.merckmanuals.adult, and www.merck-manuals.porn. Users accessing the websites located at these domain names receive a message that they "will be directed to the Merck Group website" as shown below:



71.     THE MERCK MANUAL offered by Merck is one of the oldest, most widely used, comprehensive medical resources available to both professionals and consumers.  Merck Sharp & Dohme is also the owner of U.S. Reg. No. 2313554 for THE MERCK MANUAL.

72.     KGaA has registered and used these domain names comprised solely of or prominently using the mark MERCK MANUAL(S) in bad faith to redirect users searching for THE MERCK MANUAL, which is associated with Merck, to KGaA's website.

### Evidence of Actual Confusion

73.     Not surprisingly given KGaA's recent focus on developing its emerging U.S. business, its concerted efforts to identify itself as being the "ORIGINAL" or "THE" Merck in the United States and its focus on immuno-oncology therapies which directly compete with Merck, KGaA's use of MERCK has resulted in numerous instances of actual confusion in the United States.

74.     For example, at least one U.S. researcher believed she was communicating with Merck regarding an oncology research grant when she was actually communicating with KGaA at the email address goi_emdserono@merckgroup.com.

75.     In another example, screenshots of a U.S. based social media page maintained by KGaA as part of the recently formed More than a Mother initiative (which name is confusingly similar to Merck's Merck for Mothers initiative) demonstrate both infringing uses of MERCK and evidence of actual confusion as shown below, with at least one Twitter user (ARC Fertility located in California) attributing the More than a Mother Campaign to Merck.



76.    Further, KGaA's infringing uses of MERCK as discussed herein, particularly in the context of its more recent shift in business focus to the immuno-oncology field, has created an environment in which actual confusion is virtually inevitable such that the media mistakes the two companies, further perpetuating confusion.

77.    For example, a U.S. based media source reporting on KGaA's collaboration with Pfizer regarding the initiation of Phase III First-Line Trial of Avelumab in Patients in non-small cell lunch cancer (NSCLC) mistakenly referred to KGaA as "Merck". *See* article attached as **Exhibit E.**

78.    Yet another U.S. based media source mistakenly reported in October 2015 that "Merck & Co. Inc. (NYSE: MRK) announced the relaunch of its brand identity. The fundamental revision of the visual appearance as well as the introduction of a new logo reflects the transformation into a global science and technology company." Instead, it was KGaA who announced the launch of its brand identity in October 2015. *See* article attached as **Exhibit F** and paragraph 43.

41

79.    News reports on KGaA's development of an anti-PD-L1 immuno-oncology therapy also referenced Merck and Merck's ticker (NYSE: MRK) but referred to it as a "German healthcare company" and "German Pharmaceutical Company" and referenced KGaA's recent acquisition of Sigma-Aldrich Corporation.  As shown below, such reports mistakenly attribute KGaA's "less than impressive" results to Merck & Co., Inc.



80.    News reports reporting negatively on KGaA's Avelumab drug, titled "Avelumab in Lung is Unimpressive," also mistakenly associated Merck, its distinctive corporate logo and Merck & Co., Inc.'s ticker (NYSE: MRK) in a story about Avelumab, KGaA's anti-PD-L1 immuno-oncology therapy (which therapy is a rival to Merck's anti-PD-1 immunotherapy, although it

targets a different molecule in the PD-1/PD-L1 pathway) and depicted Merck's logo as the entity involved as shown below.



81.     Merck Sharp & Dohme has priority of use for the Merck Marks and Trade Names over KGaA's use of the Merck KGaA trade name and trademarks containing MERCK, or confusingly similar marks, in the United States.

82.     Defendant had both actual and constructive knowledge of Merck Sharp & Dohme's ownership and registration of the MERCK Marks and Trade Names in the United States, including the MERCK mark in U.S. Reg. No. 108,566 by virtue of the MERCK Registrations and the longstanding communications and Coexistence Agreements between Merck and KGaA.

83.     Given Merck's prior and substantial use of the MERCK Marks and Trade Names in connection with its goods and services in the United States, Defendant's unauthorized use of MERCK, as set forth herein, has and will likely continue to, *inter alia*, confuse or deceive consumers as to source, sponsorship or approval of Defendant's products, and consumers are likely to erroneously believe that Merck sponsors or is somehow affiliated with Defendant.

84.     KGaA's unauthorized use of MERCK Marks and Trade Names as described in paragraphs 35 through 80 are collectively referred to herein as **KGaA's Unauthorized Uses**.

85.     Unless this Court restrains the Defendant's acts complained above herein, Defendant will continue to cause irreparable injury to Merck and to the public for which there is no adequate remedy at law.

<u>**COUNT ONE**</u>
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)**

86.     Plaintiffs repeat paragraphs 1 through 85 as if fully set forth herein.

87.     Merck Sharp & Dohme owns the MERCK Registrations and such registrations are valid and enforceable.

88.     The marks and trade names which are the subject of KGaA's Unauthorized Uses are confusingly similar to the marks in the MERCK Registrations in appearance, sound, and commercial impression.

89.     KGaA's Unauthorized Uses  are likely to cause confusion or mistake with the marks which are the subject of the MERCK Registrations, or to deceive as to source, affiliation, or sponsorship with Merck, in violation of the Lanham Act, 15 U.S.C. § 1114.

90.     Merck Sharp & Dohme has been and/or is likely to be damaged by Defendant's infringement in an amount to be determined at trial.

91.     Defendant's acts have been committed with the knowledge of Merck Sharp & Dohme's exclusive rights and goodwill in the MERCK Registrations and, Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

92.     As a result of Defendant's trademark infringement, Defendant has caused, and will continue to cause, irreparable harm to Merck Sharp & Dohme and the goodwill associated with the MERCK Registrations for which Merck Sharp & Dohme has no adequate remedy at law. Thus, Merck Sharp & Dohme is entitled to, *inter alia*, injunctive relief.

## COUNT TWO
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

93.     Plaintiffs repeat paragraphs 1 through 92 as if fully set forth herein.

94.     Merck has common law and federal trademark rights in the MERCK Marks and Trade Names, which are uniquely associated with Merck as a source of goods and services offered in connection with the MERCK Marks and Trade Names.

95.     The marks and trade names which are the subject of KGaA's Unauthorized Uses are confusingly similar to the MERCK Marks and Trade Names in appearance, sound, and commercial impression.

96.     KGaA's Unauthorized Uses  are likely to cause confusion or mistake with the MERCK Marks and Trade Names, or to deceive as to source, affiliation, connection, association, or sponsorship of Defendant with Merck, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

97.     KGaA's Unauthorized Uses are confusingly similar to the MERCK Marks and Trade Names and constitute unfair competition and Merck has been, and will continue to be, damaged by Defendant's acts in an amount to be determined at trial.

98.     Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

99.     Defendant's acts of unfair competition have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK Marks and Trade Name, for which Merck has no adequate remedy at law.  Thus, Merck is entitled to, *inter alia*, injunctive relief.

## COUNT THREE
### FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

100.    Plaintiffs repeat paragraphs 1 through 99 as if fully set forth herein.

101.    Merck has common law and federal trademark rights in the MERCK word mark, which is uniquely associated with Merck as a source of the goods offered in connection with the mark.

102.    The MERCK word mark is highly distinctive in connection with the goods and services offered under the mark.

103.    The MERCK word mark is widely recognized by the general consuming public of the United States as a designation of source for Merck's goods and is famous within the meaning of 15 U.S.C. § 1125(c).

104.    Merck has sold goods and rendered services under the MERCK word mark across the United States.

105.    The MERCK word mark was famous, within the meaning of 15 U.S.C. § 1125(c) long before KGaA's Unauthorized Uses began, which uses are virtually identical to the MERCK word mark.  KGaA's Unauthorized Uses have created and are likely to create an association with the MERCK word mark, impair the distinctiveness of the famous MERCK word mark, and cause dilution by blurring and tarnishment of the MERCK word mark in violation of the Lanham Act, 15 U.S.C. § 1125(c).

106.    Merck has been, and will continue to be, damaged by Defendant's acts causing dilution of the MERCK word mark in an amount to be determined at trial.

107.    Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

108.    Defendant's acts in violation of the Lanham Act, 15 U.S.C. § 1125(c) have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK word mark, for which Plaintiffs have no adequate remedy at law. Thus, Plaintiffs are entitled, *inter alia*, to injunctive relief.

<u>**COUNT FOUR**</u>
**TRADEMARK INFRINGEMENT UNDER N.J. STAT. § 56.3-13.16**

109.    Plaintiffs repeat paragraphs 1 through 108 as if fully set forth herein.

110.    This count arises under N.J. Stat. § 56.3-13.16 for infringement of the MERCK Marks and Trade Names.

111.    As set forth above, Defendant has used, without Merck's consent, MERCK as a trademark or trade name, or confusingly similar trademarks and trade names, in connection with KGaA's Unauthorized Uses in this State, which has caused and is likely to cause consumer confusion, in violation of New Jersey state law.

112.    Merck has common law and federal trademark rights in its MERCK Marks and Trade Names, which are uniquely associated with Merck as a source of the goods and services offered in connection with the MERCK Marks and Trade Names.

113.    Merck has been and/or is likely to be damaged by Defendant's infringement in an amount to be determined at trial.

114.    Defendant's actions as described above are in violation of N.J. Stat. § 56.3-13.16, as Defendant has intentionally infringed and will continue to infringe Merck's MERCK Marks and Trade Names.

115.    Defendant is liable to Merck for damages in an amount yet to be ascertained and an injunction against its foresaid actions. Such damage may be trebled in the discretion of the Court.

<u>**COUNT FIVE**</u>
**TRADEMARK DILUTION UNDER N.J. STAT. § 56.3-13.20**

116.    Plaintiffs repeat paragraphs 1 through 115 as if fully set forth herein.

117.    This count arises under N.J. Stat. § 56.3-13.20 for dilution of the MERCK word mark.

118.    As set forth above, upon information and belief, Defendant has used, without Merck's consent, the MERCK word mark in connection with KGaA's Unauthorized Uses in this State, which has impaired and which is likely to impair the distinctiveness of the MERCK word mark, in violation of New Jersey state law.

119.    Merck has common law and federal trademark rights in the MERCK word mark, which is uniquely associated with Merck as a source of the goods and services offered in connection with the MERCK word mark.

120.    The MERCK word mark is highly distinctive in connection with the goods and services offered under the mark.

121.    The MERCK word mark is widely recognized by the general consuming public of the United States as a designation of source for Merck's goods and services and is famous within the meaning of N.J. Stat. § 56.3-13.20.

122.    The MERCK goods and services have been offered, sold, and rendered under the MERCK word mark across the United States and in New Jersey for decades.

123.    The MERCK word mark was famous in New Jersey within the meaning N.J. Stat. § 56.3-13.20, long before KGaA's Unauthorized Uses began. KGaA's Unauthorized Uses have created and are likely to create an association with the MERCK word mark, and thus cause dilution by blurring and tarnishment of the MERCK word mark in violation of  N.J. Stat. § 56.3-13.20.

48

124.    Merck has been, and will continue to be, damaged by Defendant's acts causing dilution of the MERCK word mark in an amount to be determined at trial.

125.    Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case. Defendant acts in violation of N.J. Stat. § 56.3-13.20 have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK word mark, for which Plaintiffs have no adequate remedy at law. Thus, Plaintiffs are entitled to, *inter alia*, injunctive relief.

## COUNT SIX
## UNFAIR COMPETITION UNDER N.J. STAT. § 56.4-1

126.    Plaintiffs repeat paragraphs 1 through 125 as if fully set forth herein.

127.    This count arises under N.J. Stat. § 56.4-1 for appropriation of the MERCK Marks and Trade Names.

128.    As set forth above, KGaA's Unauthorized Uses are likely to cause confusion or mistake with the MERCK Marks and Trade Names, or to deceive as to source, affiliation, connection, association, or sponsorship of Defendant with Merck, in violation of New Jersey state law.

129.    Merck has common law rights in the MERCK Marks and Trade Names, which are uniquely associated with Merck as a source of goods and services offered in connection with the MERCK Marks and Trade Names.

130.    KGaA's Unauthorized Uses are confusingly similar to the MERCK Marks and Trade Names and constitute unfair competition and Merck has been and/or will likely be damaged by Defendant's acts in an amount to be determined at trial.

131.    Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

132.   Defendant's acts of unfair competition have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK Marks and Trade Names, for which Merck has no adequate remedy at law.  Thus, Merck is entitled to, *inter alia*, injunctive relief.

<u>**COUNT SEVEN**</u>
**COMMON LAW UNFAIR COMPETITION**

133.   Plaintiffs repeat paragraphs 1 through 132 as if fully set forth herein.

134.   This count arises under the common law of unfair competition of the State of New Jersey.

135.   Merck has common law rights in its MERCK Marks and Trade Names, which are uniquely associated with Merck as the source of goods and services offered in connection with the MERCK Marks and Trade Names.

136.   KGaA's Unauthorized Uses have caused and are likely to cause confusion or mislead consumers and constitute unfair competition and Merck has been and/or will likely be damaged by Defendant's acts in an amount to be determined at trial.

137.   Defendant's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

138.   Defendant's acts of unfair competition have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK Marks and Trade Names, for which Merck has no adequate remedy at law.  Thus, Merck is entitled to injunctive, as well as financial, relief.

<u>**COUNT EIGHT**</u>
**FEDERAL FALSE ADVERTISING**

139.   Plaintiffs repeat paragraphs 1 through 138 as if fully set forth herein.

140.   This count arises under the Lanham Act 15 U.S.C. § 1125 (a)(1)(B) for false advertising.

141.    KGaA, through The 125 Years Campaign, has used in commerce false or misleading descriptions of fact and/or false or misleading representations of fact, in connection with its goods and/or services, which, in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of KGaA's goods, services, and/or commercial activities, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

142.    Defendant's false statements about its own products in commercial advertisements were literally false and willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

143.    Merck has been, and will continue to be, damaged by KGaA's acts of false advertising in an amount to be determined by trial.

144.    As a result of KGaA's acts, KGaA has caused, and will continue to cause, irreparable harm to Merck, for which Merck has no adequate remedy at law. Thus, Merck is entitled to injunctive, as well as financial, relief.

## COUNT NINE
## DECEPTIVE TRADE PRACTICES UNDER N.J. STAT. § 56.8-2

145.    Plaintiffs repeat paragraphs 1 through 144 as if fully set forth herein.

146.    This count arises under N.J. Stat. § 56:8-2 for deceptive trade practices.

147.    KGaA, through The 125 Years Campaign, has used in commerce false or misleading descriptions of fact and/or false or misleading representations of fact, in connection with its goods and/or services, which, in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of KGaA's goods, services, and/or commercial activities, in violation of New Jersey state law.

148.    Defendant's false statements about its own products in commercial advertisements were literally false and willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

149.    Merck has been, and will continue to be, damaged by KGaA's acts of false advertising in an amount to be determined by trial.

150.    As a result of KGaA's acts, KGaA has caused, and will continue to cause, irreparable harm to Merck, for which Merck has no adequate remedy at law. Thus, Merck is entitled to injunctive, as well as financial, relief.

**COUNT TEN**
**BREACH OF CONTRACT**

151.    Plaintiffs repeat paragraphs 1 through 150 as if fully set forth herein.

152.    This count arises under the common law of breach of contract of the State of New Jersey.

153.    KGaA is bound by the 1970 Coexistence Agreement which, *inter alia*, recognizes Merck's exclusive rights to the trademark MERCK in the United States and prohibits KGaA from using or attempting to acquire rights in any trademark containing MERCK in the United States.

154.    The Defendant has breached the contract through, *inter alia*, Defendant's use of MERCK and/or terms containing MERCK as trademarks and KGaA's Unauthorized Uses in the United States.

155.    Defendant's breach of contract has caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK Marks and Trade Names, for which Merck has no adequate remedy at law.  Thus, Merck is entitled to specific performance, injunctive as well as financial, relief.

**COUNT ELEVEN**
**CYBERSQUATTING**

156.    Plaintiffs repeat paragraphs 1 through 155 as if fully set forth herein.

157.    This count arises under the Anticybersquatting Consumer Protection Act 15 U.S.C. § 1125(d).

158.    As set forth above, Defendant's registration of domain names, namely, www.merckmanual.jobs, www.merckmanuals.jobs, www.merck-manual.jobs, www.merck-manuals.com, www.merckmanual.org, www.merck-manual.adult, www.merck-manual.porn, www.merckmanual.adult, www.merckmanual.porn, www.merck-manuals.adult, www.merck-manuals.porn, www.merckmanuals.adult, and www.merck-manuals.porn each of which immediately redirects to www.emdgroup.com and is virtually identical to Merck's trademark registration in the MERCK MANUAL constitutes bad faith use and registration in violation of the Anticybersquatting Consumer Protection Act 15 U.S.C. §1125(d).

159.    Defendant's acts of cybersquatting have caused, and will continue to cause, irreparable harm to Merck and the goodwill associated with the MERCK MANUAL marks, for which Merck has no adequate remedy at law.  Thus, Merck is entitled to forfeiture and cancellation of Defendant's domain name registration and transfer of such domain name registration to Merck.

**PRAYER FOR RELIEF**

        WHEREFORE, Merck respectfully requests that this Court:

1.      Enter a judgment against Defendant on all counts.

2.      Preliminarily and permanently enjoin Defendant from: directly or indirectly using, displaying, advertising, promoting, registering, applying to register, transferring, or including on or in connection with any products, services, promotional items, domain names or websites or

other commercial activities, the MERCK Marks and Trade Names, or any confusingly similar marks or trade names, or otherwise engaging in any further acts of trademark infringement, dilution or unfair competition against Merck or aiding, abetting, encouraging, or inducing another to do any of the acts herein enjoined.

3.      Preliminarily and permanently enjoin Defendant from using in commerce false or misleading descriptions of fact and/or false or misleading representations of fact, in connection with its goods and/or services, which, in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of KGaA's goods, services, and/or commercial activities, including without limitation those statements in The 125 Years Campaign.

4.      Order cancellation and forfeiture of Defendant's registration of domain names containing the MERCK MANUAL trademark or confusingly similar marks and transfer of such registrations to Merck.

5.      Find that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

6.      Order an accounting and for Defendant to pay over to Merck:

     a.      All monetary gains, profits, and advantages derived by Defendant from the acts complained of herein;

     b.      Damages incurred by Merck, including enhanced damages (up to treble damages) as authorized by 15 U.S.C. § 1117 and N.J. STAT. § 56.4-2;

     c.      Punitive and exemplary damages to be determined by the Court after a full hearing on the merits; and

     d.      Merck's costs and disbursements in this action, including reasonable attorneys' fees and prejudgment interest.

7.      Require Defendant and all persons acting for or in active concert or participation with them, to remove from any websites or social media and to deliver up for destruction any and all products, literature, forms, promotional materials, prints, advertising matter, circulars, stationery, labels, tags, wrappers, packaging, places stencils, signs and other materials used in the preparation thereof, bearing the MERCK Marks and Trade Names, or any confusingly similar marks or trade names.

8.      Award Merck any other or further relief that this Court may deem just or appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: January 15, 2016          By: s/ John E. Flaherty
                                     John E. Flaherty
                                     Ravin R. Patel
                                     McCARTER & ENGLISH, LLP
                                     Four Gateway Center
                                     100 Mulberry Street
                                     Newark, New Jersey 07102
                                     (973) 622-4444

                                     Raymond A. Kurz
                                     Anna Kurian Shaw
                                     Hogan Lovells US LLP
                                     555 Thirteenth St. NW
                                     Washington, D.C. 20003
                                     (202) 637-5600

                                     *Attorneys for Plaintiffs,*
                                     *Merck & Co., Inc., and*
                                     *Merck Sharp & Dohme Corp.*

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

Pursuant to Local Civil Rule 11.2, we hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: January 15, 2016       By: <u>s/John E. Flaherty</u>
                              John E. Flaherty
                              Ravin R. Patel
                              McCARTER & ENGLISH, LLP
                              Four Gateway Center
                              100 Mulberry Street
                              Newark, New Jersey 07102
                              (973) 622-4444

                              Raymond A. Kurz
                              Anna Kurian Shaw
                              Hogan Lovells US LLP
                              555 Thirteenth St. NW
                              Washington, D.C. 20003
                              (202) 637-5600

                              *Attorneys for Plaintiffs,*
                              *Merck & Co., Inc., and*
                              *Merck Sharp & Dohme Corp.*

## **CERTIFICATION PURSUANT TO L. CIV. R. 201.1**

Pursuant to Local Civil Rule 201.1, we hereby certify the above-captioned matter is not subject to compulsory arbitration in that, *inter alia*, Plaintiffs seek non-monetary relief and the amount in controversy is more than the $150,000 threshold exclusive of interest and costs and any claim for punitive damages.

Dated: January 15, 2016      By: s/ John E. Flaherty
John E. Flaherty
Ravin R. Patel
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Raymond A. Kurz
Anna Kurian Shaw
Hogan Lovells US LLP
555 Thirteenth St. NW
Washington, D.C. 20003
(202) 637-5600

*Attorneys for Plaintiffs,*
*Merck & Co., Inc., and*
*Merck Sharp & Dohme Corp.*