# BLANKROME

300 Carnegie Center | Suite 220 | Princeton, NJ 08540
A Pennsylvania LLP | Stephen M. Orlofsky, New Jersey Administrative Partner
blankrome.com

*Phone:* (609) 750-2646
*Fax:* (609) 897-7286
*Email:* Orlofsky@BlankRome.com

January 22, 2019

**VIA ECF**

Hon. Michael A. Hammer, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re: **Merck & Co., Inc. et al. v. Merck KGaA**
           **Civil Action No. 2:16-cv-0266-ES-MAH**

Dear Judge Hammer:

This firm, along with Debevoise & Plimpton LLP, represents Defendant Merck KGaA ("Defendant") in the above-referenced matter. We submit this letter jointly with Sidley Austin LLP and McCarter & English LLP, counsel for Plaintiffs Merck & Co., Inc. and Merck Sharp & Dohme Corp., to respectfully request that the Court resolve a dispute pertaining to the amount of extra time Defendant may use to depose Professor Dominique Hanssens, one of Plaintiffs' experts. Professor Hanssens' deposition is currently scheduled for February 14 and 15, 2019 in Los Angeles, California. Under the November 14, 2018 Order, the deadline for expert depositions is February 28, 2019. The parties have met and conferred but been unable to resolve this dispute.

**Defendant's Position**

Defendant respectfully requests permission to take the deposition of Plaintiffs' expert witness Professor Dominique Hanssens for fourteen hours over two days. Professor Hanssens was identified by Plaintiffs as their expert on two core issues in the case – likelihood of confusion and damages. He has submitted both an affirmative expert report and rebuttal expert report, consisting of two separate consumer perception surveys, two multiple regression analyses and thousands of pages of appendices and other supporting materials. In rebuttal, Defendants submitted the reports of eight separate experts, each of whom Plaintiffs have scheduled to depose for a full day

Due to the multiple topics on which Professor Hanssens purports to be opining, the importance of each of these topics, and the various analyses, materials and technical documents that accompany these purported opinions, two full days of deposition is necessary for Defendant to fairly examine the witness. *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL

Hon. Michael A. Hammer, U.S.M.J.
January 22, 2019
Page 2

3735702, at *2 (D.N.J. Sept. 17, 2010) ("Under Rule 30(d)(1), allowing additional time to examine a deponent is not permissive but mandatory where there is an issue of fairness as to the adequacy of the presumptive 7 hour limit on depositions."); Fed. R. Civ. P. 30(d)(1) note (2000) ("with regard to expert witnesses, there may more often be a need for additional time . . . for full exploration of the theories upon which the witness relies"); *see also Pogue v. Nw. Mut. Life Ins. Co.,* No. 14-598, 2016 WL 3124640, at *8 (W.D. Ky. June 1, 2016) (the "volume of documents and level of importance to the case that often go hand-in-hand with expert testimony frequently lead to lengthier depositions").

Likelihood of confusion and damages are crucial topics that lie at the very heart of this case, and it is important that Defendant receives a full opportunity to depose Professor Hanssens on both topics.

Likelihood of confusion is the key element in determining liability for both Plaintiffs' trademark infringement and breach of contract claims. 4 McCarthy on Trademarks and Unfair Competition § 23:1 (5th ed.) ("Likelihood of confusion is the fundamental test of . . . trademark infringement."); MSD Rule 30(b)(6) Corporate Representative Deposition Transcript 269:11-17 ("[Merck] KGaA could violate the contract in two ways . . . . One, by infringing the trademark of [U.S.] Merck in the United States under United States law or by attempting to acquire rights in a trademark containing Merck in the United States."). No matter how similar two marks are, a party can be found liable of trademark infringement only if its use is likely to cause confusion among potential purchasers of the products at issue.

Likelihood of confusion survey evidence – like the two separate surveys submitted by Professor Hanssens – can be particularly important in determining whether consumers are likely to be confused since it measures consumer perception, but only if the survey is well-designed. A survey that suffers from design and coding flaws could purport to show confusion in the marketplace when no such confusion exists – flaws that would be revealed through careful and time-consuming probing at a deposition. *See Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.,* 511 F. Supp. 2d 482, 498 (E.D. Pa. 2007) ("The probative value of a consumer survey is a highly fact-specific determination . . . .") (quoting *Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 134 (3d Cir.1994)). It is therefore critical to Defendant's defense that it be allowed a full day to fully explore the details of both of Professor Hanssens' surveys to examine the reliability of the methodology, uncover any weaknesses in the design and demonstrate that the results are invalid and/or inconsequential to the issues at hand. Defendant retained two experts to rebut this portion of Professor Hanssens' opinion (Sarah Butler, who merely rebuts Professor Hanssen, and Hal Poret, who conducted only one consumer perception study), and Plaintiffs have scheduled full day depositions of each (for a total of 14 hours). Professor Hanssens conducted two surveys and offered opinions on various other evidence purportedly showing confusion. It would be inequitable not to allow a full 7 hours to explore these topics.

Professor Hanssens' second role as a damages expert is equally pivotal in this case. He has proffered two distinct damages theories: (1) Defendant must disgorge the entirety of its $521 million in profits since 2015, regardless of any connection to the use of MERCK or the

Hon. Michael A. Hammer, U.S.M.J.
January 22, 2019
Page 3

claims at issue, and (2) Plaintiffs allegedly lost sales of approximately $70 million entirely due to Defendant's alleged use of "Merck" on fertility drugs. The extraordinary—and unreasonably—large amount of damages by itself presents good cause for Defendant to seek sufficient time to depose him as to each of the bases for these figures and how he arrived at them. *See, e.g., Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2012 WL 528280, at *3 (W.D. Okla. Feb. 17, 2012) (granting 14-hours deposition where primary witness on damages theorized there to be over $120,000,000 of damages). In proffering his opinion, Professor Hanssens conducted two multiple regression analyses and provided thousands of pages of charts, Excel sheets and other material that will need to be addressed at his deposition. Given the complexity of the analyses and the volume of supporting documents, this portion of the deposition is anticipated to take several hours. Indeed, because Defendant believes Professor Hanssens' damages analysis to be fundamentally flawed and relies on several misleading (or just plain untrue) underlying facts and propositions, Defendant had to retain six separate experts to address this portion of Professor Hanssens' opinion (Philip Green, Natalie Mizik, Mike Luby, Dr. Robert Alter, Dr. Bat-Sheva Maslow and David Stewart), which alone gives an indication of the wide breadth of topics that will have to be covered at the deposition. Plaintiffs have scheduled a full day deposition of each of Defendant's experts touching on these topics (for a total of 42 hours to address Defendant's damages rebuttal theories), while at the same time attempting to severely restrict Defendant's deposition time to much less than a full day.[1] Fairness mandates that Defendant receives, at the very least, the allotted 7 hours provided under the rules to depose Professor Hanssens on these complicated damages theories and the underlying facts and assumptions, especially considering what is at stake – a request to award Plaintiffs *the entirety of* Defendant's U.S. profits.

Plaintiffs' suggestion that Defendant can simply take the deposition and then seek additional time afterwards is both impractical and unnecessarily burdensome in this case because Professor Hanssens will be deposed in Los Angeles. Waiting until the end of the first ten hours to seek permission for additional time would require Defendant to fly across the country again for no good reason, especially when Defendant already anticipates that ten hours will be insufficient. This would also result in Professor Hanssens being deposed for three days instead of the two 7-hour days Defendant seeks. Plaintiffs' stance is particularly unreasonable in light of the fact that Professor Hanssens and Plaintiffs' counsel have already indicated they are available both February 14 and 15.

**Plaintiffs' Position**

Defendant's motion should be rejected as premature. District courts routinely reject requests for additional time before the deposition has even begun, and Plaintiffs have already gone

---

[1] During the meet and confer process, Plaintiffs eventually offered to provide Defendant with 5 hours to depose Professor Hanssens on his damages theory and 5 on the likelihood of confusion surveys. While Defendant appreciates the attempt to compromise, it would not be fair for Defendant to have less than the full 7 hours to explore each of the damages and liability theories.

Hon. Michael A. Hammer, U.S.M.J.
January 22, 2019
Page 4

above and beyond in an effort to accommodate Defendant's demands for more time. Plaintiffs believe that one day of seven hours is adequate for Professor Hanssens' deposition. But in response to Defendant's request for two full days of 14 hours, Plaintiffs offered two days of five hours each—ample time to explore Professor Hanssens' opinions. What is more, Plaintiffs offered to consider a further extension if Defendant uses that time efficiently and is unable to complete the deposition. Unwilling to compromise, Defendant rejected Plaintiffs' offer and is now seeking to double the length of the deposition to 14 hours before having asked a single question.

Defendant has also taken the opportunity of this motion to attack Professor Hanssens and his opinions before the Court. This is not the time or place for these arguments. Plaintiffs will not respond in kind, except to say that Professor Hanssens is a widely respected expert on the economic impact of marketing, and if his opinions in this case were "fundamentally flawed" and based on "misleading" and "untrue" assumptions, as Defendant claims, Defendant would not have felt the need to hire eight experts to respond.

"A party generally should not seek additional time for a deposition before the deposition is taken." 7 Moore's Federal Practice – Civil § 30.45 (2009). As the court explained in *Malec v. Trs. of Boston Coll.*, 208 F.R.D. 23, 24 (D. Mass. 2002):

> [T]he better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought.

Numerous courts have found that *Malec* outlines the preferred approach. *See, e.g.*, *Pratt v. Archstone Willow Glen Apartments*, No. C 08-3588 JF (RS), 2009 WL 2032469, at *1 (N.D. Cal. July 10, 2009) ("Defendants should complete their first seven hour deposition before seeking leave for additional time."); *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 3:06-CV-232 (CFD), 2006 WL 1525970, at *3 (D. Conn. May 25, 2006) ("[C]ourts have viewed Rule 26(b)(2) as containing an exhaustion requirement with regard to moving for leave to extend a deposition."); *Brooks v. Motsenbocker Advanced Devs., Inc.*, No. 07CV773 BTM (NLS), 2008 WL 2033712, at *3 (S.D. Cal. May 9, 2008); *Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. C 10-5527 MEJ, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011); *cf. Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. CIV.A. 03-1519 (AET), 2006 WL 6487632, at *4 (D.N.J. Aug. 22, 2006) ("Plaintiffs shall be required to conduct the ten depositions that they are currently permitted before this Court will entertain a motion for leave to take additional depositions."). It is only after testimony has been taken that the Court will be in a position to determine whether the time is being used efficiently and whether more time is justified. *Brooks*, 2008 WL 2033712, at *3 (denying without prejudice a motion for additional deposition time and noting that "there is no complete record before the Court at this time (because the deposition has not yet started)"); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC)(HBP), 2008 U.S. Dist. LEXIS 41754, at *24 (S.D.N.Y. May. 29, 2008) (before awarding additional time courts consider "whether the time

**BLANKROME**

Hon. Michael A. Hammer, U.S.M.J.
January 22, 2019
Page 5

previously afforded for the deposition was used efficiently and whether there are additional relevant areas of inquiry").

Defendant's motion also fails to establish good cause for a 14-hour deposition. Defendant claims they need more time with Professor Hanssens to "examine the reliability of his methodology," but this is not a case where the expert failed to explain his opinions and the facts upon which they are based. Professor Hanssens' reports and back-up materials provide a clear and thorough description of his methodology. Defendant has also greatly exaggerated the breadth of Professor Hanssens' opinions. The extraordinary number of experts Defendant has retained—whose opinions and underlying evidence are highly duplicative of each other—says nothing about the number of issues in Professor Hanssens' reports, which could all be addressed in the presumptive seven hours. *Roberson v. Bair,* 242 F.R.D. 130, 138-39 (D.D.C. 2007) ("[T]he court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule.").

In any event, this issue is not ready for the Court. Defendant should first proceed with the deposition as scheduled on February 14 and 15. If Defendant still believes that more is needed, the parties can discuss whether a further extension of those days, or the scheduling of an additional day, is appropriate. At this point, adding another four hours to an already extended deposition is premature and unwarranted.

Thank you for Your Honor's consideration.

                                                          Respectfully submitted,

                                                          */s/ Stephen M. Orlofsky*

                                                          STEPHEN M. ORLOFSKY

cc: Counsel of Record (via ECF)