**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
New Jersey Resident Partner
Michael R. Darbee
300 Carnegie Center,
Suite 220
Princeton, NJ  08540
Telephone:  (609) 750-2646
Facsimile:  (609) 897-7286
stephen.orlofsky@BlankRome.com
Michael.Darbee@BlankRome.com
*Attorneys for Defendant*

**DEBEVOISE & PLIMPTON LLP**
David H. Bernstein (*pro hac vice*)
Jyotin Hamid (*pro hac vice*)
Megan K. Bannigan (*admitted*)
Justin C. Ferrone (*admitted*)
Meredith E. Stewart (*pro hac vice*)
Kathryn C. Saba (*pro hac vice*)
919 Third Avenue
New York, NY  10022
Telephone:  (212) 909-6696
Facsimile:  (212) 521-7696
dhbernstein@debevoise.com
jhamid@debevoise.com
mkbannigan@debevoise.com
jcferrone@debevoise.com
mestewart@debevoise.com
ksaba@debevoise.com
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCK & CO., INC., and<br>MERCK SHARP & DOHME CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK KGAA,<br><br>Defendant. | Civil Action No.<br>2:16-cv-00266-ES-MAH |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## <u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 2

    I.    There Is No Dispute of Fact or Law: Merck KGaA Is Entitled
        To Use MKDG In The U.S. As Its "Corporate Name." ..................... 2

    II.   US Merck Cannot Prove False Advertising. ...................................... 6

    III.  US Merck Cannot Prove Dilution. ................................................... 10

CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*10x Genomics v. Celsee*,
  No. 19-862, 2021 WL 1320492 (D. Del. Apr. 8, 2021) ....................................8

*Bambi Baby.com Corp. v. Madonna Ventures, Inc.*,
  No. 18-12669, 2019 WL 2337447 (D.N.J. June 3, 2019) ................................8

*Chatam Int'l, Inc. v. Bodum, Inc.,*
  157 F. Supp. 2d 549 (E.D. Pa. 2001), *aff'd,*
  401 F. App'x 685 (3d Cir. 2002)................................................................ 10-11

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH,*
  No. 10-453, 2010 WL 5239238 (D.N.J. Dec. 16, 2010) ..................................10

*DeAngelis v. Rose,*
  727 A.2d 61(N.J. Super. Ct. App. Div. 1999).....................................................4

*Digigan, Inc. v. Ivalidate, Inc.*,
  No. 02-420, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ..................................10

*Hershey Co. v. Friends of Steve Hershey*,
  No. 14-1825, 2015 WL 795841 (D. MD. Feb. 24, 2015).......................... 11-12

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018) .............................................................8

*Luv N' Care, Ltd. v. Regent Baby Prod. Corp.*,
  841 F. Supp. 2d 753 (S.D.N.Y. 2012) ...........................................................14

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012)............................................................ 9-10

*Muhammad v. Nike, Inc.*,
  No. 20-17892, 2021WL 4133965 (D.N.J. Sept. 10, 2021)..............................12

*MZ Wallace Inc. v. Fuller*,
  No. 18-2265, 2018 WL 4007645 (S.D.N.Y. Aug. 22, 2018) ...........................15

*Oscar v. Simeonidis*,
  800 A.2d 271 (N.J. Super. Ct. App. Div. 2002)...................................................5

*Parks LLC v. Tyson Foods, Inc*,
  863 F.3d 220 (3d Cir. 2017).......................................................................... 7-8

*Parkway Baking Co. v. Freihofer Baking Co.*,
  255 F.2d 641 (3d Cir. 1958)..............................................................................9

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*,
  505 F. Supp. 2d 245 (D. Del. 2007) ...............................................................10

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011)......................................................................7, 8, 9

*Rockwell Automation, Inc. v. Radwell Int'l, Inc.*,
  No. 15-5246, 2016 WL 7018531 (D.N.J. Nov. 30, 2016).................................14

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990).............................................................................8

*Smart Vent v. Crawl Space Door Sys.*,
  No. 13-5691, 2017 WL 4948063 (D.N.J. Nov. 1, 2017)....................................9

*Steak Umm Co., LLC v. Steak 'Em Up, Inc.*,
  No. 09-2857, 2011 WL 3679155 (E.D. Pa. Aug. 23, 2011).............................12

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*,
  888 F. Supp. 2d 738 (E.D. Va. 2012), *aff'd sub nom.*,
  739 F.3d 150 (4th Cir. 2014).........................................................................13

*Syncsort Inc. v. Innovative Routines Int'l, Inc.*,
  No. 04-3623, 2008 WL 1925304 (D.N.J. Apr. 30, 2008) .............................7, 9

*Troy v. Rutgers*,
  774 A.2d 476 (N.J. 2001)..................................................................................4

*Weichert Co. Realtors v. Ryan*,
  608 A.2d 280 (N.J. 1992)............................................................................ 4-5

## Statutes

15 U.S.C. § 1125(c)(2)(A) ..................................................................................12

N.J. Stat. Ann. § 56:8-19 ........................................................................................9

**Other Authorities**

Fed. R. Evid. 803(6) ...........................................................................................13

Defendant Merck KGaA respectfully submits this reply memorandum in further support of its motion for partial summary judgment against Plaintiffs Merck & Co. Inc. and Merck, Sharp & Dohme Corp. (together, "US Merck").

## PRELIMINARY STATEMENT

US Merck has raised no genuine, material disputes of fact to preclude partial summary judgment in favor of Merck KGaA as to each of the claims raised.

*First*, summary judgment should be granted to recognize Merck KGaA's right, under the parties' operative coexistence Agreement, to use "Merck KGaA, Darmstadt, Germany" (MKDG) as its "corporate name" in the U.S. US Merck ***does not dispute*** that point, but instead falls back on its contention that MKDG has, in recent years, been used as a "brand" or "trademark," which US Merck contends is beyond "corporate name" use. That does not create a disputed issue of fact relevant to Merck KGaA's motion. Resolution of this issue will significantly streamline the trial as to multiple causes of action.

*Second*, US Merck's false advertising claims fail because: (1) the claim "125 Years in the U.S." is true or, at worst, ambiguous; and (2) US Merck cannot prove two required elements of its claim: deception and materiality. US Merck's conflation of its trademark claims with false advertising claims is contrary to the law of this Circuit and does not create a material disputed issue of fact. US Merck's state law false advertising claim also fails for lack of standing.

***Third***, US Merck's dilution claim fails because US Merck has not presented evidence establishing that the MERCK trademark was widely recognized ***amongst the general consuming public*** (*i.e.*, famous) prior to Merck KGaA's first commercial use of "Merck" in the U.S.—or at all. Regardless of whether MERCK has a strong brand today, US Merck has not put forth evidence in the record to create a genuine, material issue of fact as to fame.

US Merck is not wrong when it says that this case is "factually complex" with "major aspects" that will need to be resolved at trial. Partial summary judgment will assist in streamlining the process, and should be granted.

## ARGUMENT

### I.    There Is No Dispute of Fact or Law: Merck KGaA Is Entitled To Use MKDG In The U.S. As Its "Corporate Name."

US Merck does not dispute that it permitted Merck KGaA's use of MKDG as its corporate name for nearly twenty years. Whether Merck KGaA's legal right to use MKDG is based on contractual modification or equitable defenses, partial summary judgment should be granted.

***First,*** US Merck misleadingly contends there are questions of fact as to whether there was "mutual and clear" intent of the parties to modify the Agreement to allow MKDG to be used in place of "E. Merck, Darmstadt, Germany." US Merck's opposition focuses heavily on Merck KGaA's alleged "rebrand" in 2015, when US Merck alleges Merck KGaA began using MKDG as a "brand" or

2

"trademark." But that is not the issue here. The parties' mutual intent to modify the contract to allow use of MKDG *as a corporate name* could not be clearer. As US Merck has expressly testified—and ignores in its Opposition—it allowed Merck KGaA to replace "E. Merck, Darmstadt, Germany" with MKDG in Paragraph 2(a) of the Agreement. Opp. Ex. 13, 89:21-90:7 ("I'm saying [**we**] **let them . . . use Merck KGaA** *instead of E. Merck* **in that [Paragraph] 2(a)**") (emphasis added); *see also* Br. Ex. N, 66:5-16 ("we decided not to sue on the change from E. Merck to Merck KGaA . . . provided they maintained that narrow exception of using it only to reference back to the parent company" found in Paragraph 2(a)). Indeed, US Merck's Opposition concedes that (i) it made a "decision not to sue" for Merck KGaA's corporate name use nearly twenty years prior to the 2015 "rebranding campaign," Opp. 21 and (ii) it "did not object to [Merck KGaA's] use of the name" earlier because it was not using the name "as a brand, during that time," Opp. 15.[1]

---

[1] US Merck distorts Mr. Matukaitis's testimony regarding modification, leaving out a key clause that makes clear that US Merck consented to the "corporate name" use.  *See* Br. Ex N, 66:5-14 ("We always maintained the position that wasn't permissive, but we decided not to sue on the change from E. Merck to Merck KGaA provided, you know, we were going to watch and monitor their use and provided they maintained that narrow exception of using it only to reference back to the parent company, always using Darmstadt, Germany with the proximity and the prominence requirement."). US Merck further distorts the significance of the 2002 emails, where a plain reading shows it affirmatively requested that Merck KGaA represent itself as [MKDG] in the U.S. *See* Br. Exs. P and Q; *see also* Br. Ex. L, 188:16–189:19; Def. Response to Pltfs. Suppl. Stmt. of Disputed Material Facts ¶ 6.

3

US Merck's reliance on the parties' "historical practice" or Merck KGaA's internal documents does not change the analysis or create a genuine issue of material fact. That the parties may have previously modified an agreement in writing does not change the parties' mutual and clear intent here. And that Merck KGaA may have had internal discussions about whether they could use MKDG as a "trademark" or "brand"—including questioning whether use of MKDG "as a brand" was "allowed," in a "legal gray zone," created "litigation risk" or would put it in "logo jail"—once again does not touch upon the actual issue here—whether Merck KGaA may use MKDG *as a corporate name*.[2]

**Second,** US Merck raises no valid question of law to prevent summary judgment on modification. Contrary to US Merck's assertions, Opp. 12, the cases it cites show summary judgment is appropriate when, as here, "no reasonable juror could reach other than one conclusion." *Troy v. Rutgers*, 774 A.2d 476, 483 (N.J. 2001); *see also DeAngelis v. Rose,* 727 A.2d 61, 70 (N.J. Super. Ct. App. Div. 1999) (affirming summary judgment where contract was "clearly modified and condoned by the parties' conduct"). And as another case it cites shows, its contention that silence cannot manifest assent to modify is also wrong: a finding that silence manifests assent is appropriate when "the relationships between the

---

[2] Merck KGaA disagrees with US Merck's characterizations of Merck KGaA's internal documents, including the contentions that it in any way "violat[ed] both the contract and law when it used the Merck mark." *See* Opp. at 17.

parties or other circumstances . . . justify" it. *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992).[3] US Merck's conduct justifies such a finding here.

**Third**, US Merck is barred by equitable defenses from contesting corporate name use of MKDG in the U.S. US Merck contends: (i) there was no waiver because it did not relinquish any rights, Opp. at 21; (ii) laches doesn't apply because US Merck's delay in bringing suit was excused since Merck KGaA previously used MKDG only as a corporate name, Opp. at 22; and (iii) it did not make "knowing and intentional misrepresentations" about the use of MKDG, and Merck KGaA failed to take "reasonable steps" to ascertain the truth of the facts on which it relied. But all of that is belied by the actual facts described above. US Merck is equitably barred from claiming that Merck KGaA cannot use MKDG *as a corporate name* under the Agreement. *See* Br. 8-10.

---

[3] Similarly, US Merck's footnote contention that no valid consideration was exchanged because it received no benefit (Opp. 18, n.6) does not create a fact dispute. US Merck concedes its "*decision not to sue* before KGaA's re-branding campaign *was rooted in KGaA's promises* that it would only use '[MKDG]' in very limited, non-commercial, non-brand settings." Opp. 21. It thus admits it let Merck KGaA use MKDG "instead of" E. Merck as a corporate name, Opp. Ex. 13, 89:21-90:7, and "held off on filing a claim" because it *received a benefit* in the form of "assurances from [Merck] KGaA's in-house counsel." Opp. 14-15 (citing Br. Ex. N, 65:22-66:3). This is sufficient consideration. Br. 12, 14; *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. Super. Ct. App. Div. 2002) ("Mutual promises are sufficient consideration . . . the value given or received as consideration need not be monetary or substantial."). Opp. Ex. 3 does not undermine this conclusion; it shows rebranding considerations, not legal interpretations of the Agreement.

To streamline a key issue at trial, US Merck's claims should be dismissed to the extent they are premised on the allegation that Merck KGaA may not use "Merck KGaA, Darmstadt, Germany" as a corporate name.

## II. US Merck Cannot Prove False Advertising.

US Merck has not raised any genuine or material fact disputes precluding summary judgment on the "125 Years in the U.S." false advertising claims.

***First***, the claim "125 Years in the U.S." is literally true. As Merck KGaA has explained, it was present in the U.S. continuously from 1890 through 2015, with the exception of limited time periods of war. Br. 21-22.[4] US Merck contends the plain text of the claim means that Merck KGaA "operated in the [U.S.] for 125 years," Opp. 24-25, and that conducting business with U.S. companies (*e.g.*, as a distributor) or through subsidiaries does not "count" as "operation." Resp. 56.1 ¶¶ 21-22. The text "125 Years in the U.S." does not use the term "operating" or specify the method by which Merck KGaA was "in the U.S." (directly, through

---

[4] US Merck does not dispute that the contract was signed in 1890, SoF ¶ 19, that Merck KGaA had an agreement with US Merck acting as its distributor (memorialized in 1932), or that Merck KGaA acquired subsidiaries with long histories of doing business in the U.S. *See id.* ¶¶ 21-22. And the documents that US Merck cites (and misconstrues) do not create material issues of fact. Opp. 23-24. Mr. Löber correctly notes that EMD (a brand previously used by Merck KGaA, Opp. at 6) did not exist in 1890, but Merck KGaA's U.S. subsidiary did. Opp. 23-24 (mischaracterizing document by adding "[*i.e.*, KGaA]"). That Merck KGaA opened a new, formal business entity in 1971 is also undisputed; it does not mean that Merck KGaA wasn't otherwise "in the U.S." before then. Opp. 24.

affiliations, or both). US Merck's attempts to re-write and twist the actual claim underscore that the actual claim is not literally false. *See* Br. 22 (literally false claims must be unambiguous).

**Second,** US Merck also fails to prove that consumers were ***actually deceived*** as to Merck KGaA's length of time in the U.S. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011); *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. 04-3623, 2008 WL 1925304, at *11 (D.N.J. Apr. 30, 2008) (where plaintiff seeks damages, even if claim is literally false, they must also prove that "the falsification . . . actually deceives a portion of the buying public") (citation omitted).

To prove deception, US Merck points only to: (i) Dr. Hanssens's survey testing whether consumers were confused by Merck KGaA's use of "Merck," and (ii) Dr. Wind's report identifying a single incident where an individual apparently believed "Merck, and not KGaA, had placed the [125 Years] advertisement." Opp. 26 (citing Br. Exs. X, ¶ 44 and EE, ¶ 129, respectively). Rather than showing deception related to the "125 Years in the U.S." claim, these arguments misleadingly conflate US Merck's false advertising claim with trademark infringement. But false advertising claims cannot be premised on alleged confusion caused by use of a plaintiff's trademark, because they do not involve "'misrepresent[ation of] the nature, characteristics, qualities, or geographic origin'

of a product." *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226-27 (3d Cir. 2017) (citation omitted);[5] *Bambi Baby.com Corp. v. Madonna Ventures, Inc*., No. 18-12669, 2019 WL 2337447, at *7-8 (D.N.J. June 3, 2019) (dismissing false advertising claim where only misrepresentation alleged was that defendant caused confusion by use of plaintiff's trade dress). No record evidence is capable of proving that consumers were deceived by the "125 Years" claim. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (claim dismissed; no showing that "challenged advertisement" deceived consumers regarding nature of product).

**Third**, regardless of whether a claim is literally false or merely deceptive, *a plaintiff must separately prove materiality*. *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc*., 902 F.2d 222, 231 (3d Cir. 1990); *Pernod*, 653 F.3d at 248 (only "the second element [of a false advertising claim], actual deception or a tendency to deceive"—not the third element, materiality— "is presumed if a plaintiff proves" literal falsity).[6] US Merck's sole evidence of "materiality" is Dr. Hanssens's

---

[5] US Merck's assertion that it has other unspecified false advertising claims based on Merck KGaA's "misuse of the Merck name" is likewise meritless. Opp. 22, n.8. These claims, to the extent they were even pled, "fail because [they] are . . . false association claim[s] in disguise." *Parks*, 863 F.3d 220 at 223.

[6] Neither case cited by US Merck supports a contrary conclusion in this matter. Opp. 25. One did not address materiality. *10x Genomics v. Celsee*, No. 19-862, 2021 WL 1320492, at *1 (D. Del. Apr. 8, 2021). The other does not cite Third Circuit precedent for the proposition, and is inapposite because the only relief

survey showing respondents "deemed tenure of operations in the [U.S.] important to their purchasing decisions." Opp. 26. That does not establish that the alleged "**deception** is . . . likely to influence purchasing decisions." *Pernod*, 653 F. 3d at 248. A survey asking whether consumers find "[t]he length of time the company has been operating in the United States" to be important does not say anything about whether consumers find the statement "125 Years in the U.S." to be important, let alone whether they would find the difference between what US Merck contends is false (125 years) and what US Merck contends is true (70 years), Resp. SoF ¶¶ 19, 23; Opp. 5, 24, to be important. Br. 24-26. US Merck does not address this argument or cite to a single case stating that a survey which does not refer to the allegedly false statement can support a finding of materiality.

 **Finally**, US Merck's state law claim also fails. To bring suit under the NJFCA, one must have "suffer[ed] an ascertainable loss" as a result of a defendant's violation. N.J. Stat. Ann. § 56:8-19. "Ascertainable loss" is "when a consumer receives less than what was promised." *Mickens v. Ford Motor Co.*, 900

---

sought was an injunction. *Smart Vent v. Crawl Space Door Sys.*, No. 13-5691, 2017 WL 4948063, at \*6 (D.N.J. Nov. 1, 2017). Where, as here, a plaintiff seeks damages, it "must show . . . [the] falsification actually deceives a portion of the buying public . . . [and] some customer reliance on the false advertisement," regardless of whether the statement at issue is "literally false." *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958); *Syncsort*, 2008 WL 1925304, at \*11 (where no evidence of actual reliance on false advertising, summary judgment granted) (citing *Parkway*).

F. Supp. 2d 427, 437 (D.N.J. 2012). As properly interpreted, the NJFCA only

grants *consumers*, not competitors, standing. Br. 22; *Church & Dwight Co. v. SPD*

*Swiss Precision Diagnostics, GmBH*, No. 10-453, 2010 WL 5239238, at *9 (D.N.J.

Dec. 16, 2010). The few cases US Merck cites for the opposite proposition are

unavailing—each ultimately relied on a single Chancery Division decision that did

not involve the NJCFA or address "ascertainable loss." Opp. 29, n.11. Because US

Merck is not a consumer and has not received "less than what was promised" as a

result of the "125 Years in the U.S." claim, its NJCFA claim fails.[7]

## III.   US Merck Cannot Prove Dilution.

US Merck cannot establish that its MERCK trademark (1) is famous and (2)

achieved fame prior to Merck KGaA's first commercial uses.

***First***, US Merck has not, and cannot, establish that its trademark was famous

***prior*** to Merck KGaA's first commercial use of "Merck" in the U.S. In *Chatam*

---

[7] US Merck's arguments that the advertising claims were "in connection with
goods and services" are also unavailing. The proximity of an alleged misstatement
to product-references "in the course of commercial advertising or promotion" does
not establish that it is "in connection with goods or services." *Pernod Ricard USA
LLC v. Bacardi U.S.A., Inc.*, 505 F. Supp. 2d 245, 250, 255 (D. Del. 2007) (alleged
false statement of trademark ownership not "in connection with goods or services"
despite inclusion in "marketing program" for product launch); *Digigan, Inc. v.
Ivalidate, Inc.*, No. 02-420, 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004)
(complaint "does not allege any 'false or misleading representation of fact' 'in
connection with any goods or services'" where "in the course of Defendants'
website advertising of products protected by the patent," defendants falsely stated
that they owned [] patent").

*Int'l, Inc. v. Bodum, Inc.*, which US Merck's Opposition notably ignores, the Third Circuit affirmed that "the statute looks to the mark's fame at the time of the [defendant's] first commercial use, not [when] the first use occurs that the mark's owner finds objectionable." 157 F. Supp. 2d 549, 560 (E.D. Pa. 2001), *aff'd*, 401 F. App'x 685 (3d Cir. 2002). US Merck nevertheless argues that fame should be measured as of 2015, the date by which US Merck contends Merck KGaA "rebranded" and began using "Merck" objectionably. Opp. 39. This approach disregards the law: fame must predate first commercial use—*objectionable or not*.

Merck KGaA engaged in commercial uses of "Merck" long before 2015 and at least as early as the 1990s. While the mere existence of the 1955 and 1970 coexistence agreements allowing Merck KGaA's use of "Merck" as part of its corporate name is sufficient evidence, the record is also replete with specific examples of Merck KGaA's early uses of "Merck" in the U.S. For example, in 1996, Merck KGaA used MKDG in a "Supplier Partnership Program" presentation. Br. Ex. R, pp. 20-23. In 1998, Merck KGaA used MKDG in connection with a press release, Br. Ex. R, p. 26, and in large print, in connection with a "Notice of Offer to Purchase" common stock in CN Biosciences, Inc., in *The Wall Street Journal*, Br. Ex. R, pp. 24-25. In 2001, Merck KGaA used MKDG in connection with a product sheet and label. Br. Ex. R, pp. 17-19. These uses are plainly commercial—whether or not US Merck objected to or knew of them. *See*

11

*Hershey Co. v. Friends of Steve Hershey*, No. 14-1825, 2015 WL 795841, at *6 (D. MD. Feb. 24, 2015) (distinction between commercial and noncommercial use is whether the "speech [is] protected by the First Amendment") (citation omitted).

Resolution of the dilution claim is therefore simple. Apart, from its trademark registration, US Merck has not identified any evidence of fame predating 2003. Because a trademark registration, alone, is legally insufficient to show fame, *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. 09-2857, 2011 WL 3679155, at *8-9 (E.D. Pa. Aug. 23, 2011), US Merck cannot prove fame prior to Merck KGaA's first commercial uses.

***Second***, US Merck also fails to provide sufficient record evidence to show fame ***at any time***. Its contrary arguments ignore key aspects of the law: to show fame, it must prove *widespread* recognition amongst the ***general consuming public***—not, a niche population segment. *See* 15 U.S.C. § 1125(c)(2)(A); *Muhammad v. Nike, Inc.*, No. 20-17892, 2021 WL 4133965 at *3 (D.N.J. Sept. 10, 2021) (niche recognition insufficient). And the ***immaterial*** fact disputes to which US Merck points should not preclude summary judgment.

US Merck has not provided evidence of actual consumer recognition. US Merck's surveys are inadmissible. US Merck argues they are "business records," Opp. 33, but does not—because it cannot—provide explanation as to whether they were made by someone with knowledge at or near the time the information was

collected, kept in the regular course and as a regular practice of business. *See* Fed. R. Evid. 803(6); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 744, n.1 (E.D. Va. 2012), *aff'd sub nom.*, 739 F.3d 150 (4th Cir. 2014) (excluding surveys not offered through anyone with personal knowledge).[8]

Even if admissible, there are key, undisputed points as to each survey and brand study that render them inadequate to show fame. *First*, because US Merck alleges that Merck KGaA used "Merck" as a trademark or brand by June 2015, any evidence of fame following that date is irrelevant. Br. Ex. X ¶ 104. The majority of the evidence US Merck relies on falls into this category and cannot support US Merck's dilution claim. *See* Opp. Exs. 4, 30 (July 2015 & October 2015 Ipsos studies); Br. Exs. CC-DD (2016 Interbrand ranking & 2017 Brand Finance ranking); Br. Ex. X (Dr. Hanssens's 2018 survey); Opp. 32 (expert reports basing conclusory opinions of fame on post-June 2015 data). *Second*, it is indisputable that the 2005 CoreBrand survey shows, at best, recognition only among a niche audience of business executives. *See* Br. Ex. Z, p. 5.[9] No reasonable fact finder

---

[8] Similarly, nothing US Merck cites suggests a hearsay survey may be admitted merely because an expert opines on it, which is what US Merck seeks to do here. Opp. 34. US Merck also contends the Ipsos surveys it cites are admissible as opposing party statements, but provides no explanation as to how a survey conducted by a third-party is a statement attributable to Merck KGaA.

[9] The surveys post-dating 2015 similarly cannot show recognition by the general consuming public. Br. Ex. CC, p. 4; Opp. Ex. 4, p. 4 ; Ex. 30, p. 5; Br. Ex. X, ¶ 58

could construe these respondents as representative of the "general consuming public." *See Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-5246, 2016 WL 7018531, at *6 (D.N.J. Nov. 30, 2016) (allegations that marks were "well-known in the sector of industrial automation and information" were insufficient). This leaves two flawed studies, Br. 31-32, stating that (i) in 2011, among a sample of the general public, 39.8% of respondents were very or somewhat familiar with MERCK, Br. Ex. AA, pp. 16, and (ii) as of 2012, "[m]ore than half of [the] [g]eneral [p]ublic [was] not familiar with Merck." Br. Ex. BB, p. 14 (emphasis added).[10] If anything, these studies show the MERCK mark is not famous.

US Merck's reliance on sales and advertising figures, which are not tied to the use of the MERCK trademark, Opp. 36-37, is also misplaced. *See Luv N' Care, Ltd. v. Regent Baby Prod. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (sales under other marks, not disputed marks, "could not support fame"). To link its sales and advertising figures to the MERCK mark, US Merck relies on expert reports. However, US Merck fails to cite passages from these reports (or any other evidence) showing it always used the MERCK mark at all, let alone prominently, in connection with sales and advertising. *See* Opp. at 37. Instead, US Merck cites

---

(each of these studies surveyed the healthcare industry); Br. Ex. DD, p. 5 (studying financial metrics, not impressions of general consuming public).

[10] *See* Response 9 to Supp. Statement of Disputed Facts for explanation of US Merck's additional misrepresentations regarding the 2012 survey's findings.

passages opining that corporate branding is important—*when used and recognized by consumers*. *See* Opp. Exs. 12, ¶¶ 16-57; 7, ¶¶ 189-93; 27, ¶¶ 5-45, 73-91; Br. Ex. EE, ¶¶ 57-58. For example, Parry explains that, "[a] corporate brand is the unique impression a consumer experiences as soon as it sees or hears the company's name." Opp. Ex. 12, ¶ 17. But without evidence that sales or advertising equate to consumers seeing or hearing MERCK, the reports do not show that sales and ad spend are a proxy for consumer recognition of MERCK. *MZ Wallace Inc. v. Fuller*, No. 18-2265, 2018 WL 4007645, at *3 (S.D.N.Y. Aug. 22, 2018) (dismissing dilution where sales and ads were with other wordmark).[11]

Accordingly, the only evidence of fame that US Merck has provided is its trademark registration, which alone, is legally insufficient to show fame. *Supra* 12.

## CONCLUSION

For the foregoing reasons, Merck KGaA respectfully requests that this Court enter partial summary judgment in favor of Merck KGaA.

Dated:  March 3, 2022

Respectfully submitted,

s/ Stephen M. Orlofsky

---

[11] The lone example to which US Merck cites—a KEYTRUDA webpage—underscores this issue.  *See* Opp. 37 (citing Br. Ex. KK). After scrolling through pages of product-brand content, with KEYTRUDA used throughout, the MERCK trademark is buried on the last page. No reasonable factfinder would conclude that such as use has catapulted MERCK to fame.

**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
New Jersey Resident Partner
Michael R. Darbee
300 Carnegie Center,
Suite 220
Princeton, NJ  08540
Telephone:  (609) 750-2646
Facsimile:  (609) 897-7286
stephen.orlofsky@BlankRome.com
Michael.Darbee@BlankRome.com
*Attorneys for Defendant*

**DEBEVOISE & PLIMPTON LLP**
David H. Bernstein (*pro hac vice*)
Jyotin Hamid (*pro hac vice*)
Megan K. Bannigan (*admitted*)
Justin C. Ferrone (*admitted*)
Meredith E. Stewart (*pro hac vice*)
Kathryn C. Saba (*pro hac vice*)
919 Third Avenue
New York, NY  10022
Telephone:  (212) 909-6696
Facsimile:  (212) 521-7696
dhbernstein@debevoise.com
jhamid@debevoise.com
mkbannigan@debevoise.com
jcferrone@debevoise.com
mestewart@debevoise.com
ksaba@debevoise.com
*Attorneys for Defendant*

16