**McCarter & English**

**Mark M. Makhail**
Partner
T. 973-639-2092
F. 973-297-6636
mmakhail@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
www.mccarter.com

March 16, 2026

**BY ECF**
Hon. Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *Merck & Co., Inc., et al. v. Merck KGaA*, Civil Action No. 16-266 (ES/MAH)

Dear Judge Hammer:

Plaintiffs Merck & Co, Inc. and Merck Sharp & Dohme LLC (collectively "Merck") hereby submit this letter memorandum on supplemental financial records pursuant to the Court's February 19, 2026 Order.  ECF No. 317.

## INTRODUCTION

Merck's request is simple and falls squarely within the heartland of Federal Civil Procedure Rule 26(e).  Merck asks only that defendant Merck KGaA ("KGaA") update the documentary evidence (compiled in four spreadsheets) that it previously produced concerning its sales and expenses in the United States.  This information is relevant to Merck's request to recover "defendant's profits" as "compensation" for KGaA's misconduct, as the Lanham Act expressly authorizes the Court to grant. 15 U.S.C. § 1117(a). Merck's request is fully consistent with ordinary litigation practice. Damages numbers are routinely brought forward in intellectual property cases before trial to avoid giving a defendant a free pass for misconduct in the period since the close of discovery.

The information requested is entirely within KGaA's control.  It is routine business information of a kind that KGaA already has produced, and that both sides' experts have already used to calculate KGaA's U.S. profits.  The problem is that the previously produced

Hon. Michael A. Hammer, U.S.M.J.
March 16, 2026
Page 2

information is incomplete.  KGaA provided data with arbitrary end dates that even predate the close of fact discovery.  Many years have now passed and KGaA continues to use "Merck" in the United States in a manner that Merck contends is unlawful. A jury will decide whether Merck's contention is correct. And if so, Merck will be entitled to an award of KGaA's U.S. profits in an amount that Judge Salas finds, in a bench proceeding, to be "just, according to the circumstances of the case." 15 U.S.C. § 1117(a).  KGaA's U.S. profits through the entire fact discovery period and beyond are relevant to Judge Salas's consideration of that equitable remedy.

KGaA resists this routine request to supplement financial records primarily by seeking to complicate it. First, KGaA claims disgorgement damages could not be imposed for the period after fact discovery because its infringement ceased. Suffice it to say, Merck disagrees, and the record – including trial exhibits – at a minimum shows that is a disputed question of fact. As the Court recognized at the pretrial conference, liability is often disputed before trial, and the plaintiffs' right to discovery regarding potential damages does not hinge on establishing liability first.  ECF No. 320 at 24:25–25:7.  Second, KGaA claims that allowing limited supplementation of financial information would require reopening a Pandora's box of discovery.  It has offered no support for that claim, which this Court's precedent soundly contradicts.

In essence, KGaA is jumping ahead to the full-blown post-trial equity question. Judge Salas will decide whether to award disgorgement, and if so how much. Undoubtedly, the parties will have very different views about all of that. But that is for later. For now, the only salient question is whether KGaA should be directed to produce updated financials to allow Merck's expert to analyze KGaA's additional profits.  Under Rule 26(e), the answer to that question is "yes."

Hon. Michael A. Hammer, U.S.M.J.
March 16, 2026
Page 3

**ARGUMENT**

Rule 26(e) requires a party that has previously responded to a "request for production" to supplement that response if it is "incomplete" in a material sense. Fed. R. Civ. P. 26(e)(1). As long as the requested supplement is relevant, and not unduly burdensome or prejudicial, it should be granted. *Thomas & Betts v. Richards Mfg. Co.*, Civil Action No. 01-4677 (SRC)(MAS), 2010 WL 2400151, at *4 (D.N.J. June 10, 2010).

**A. KGaA's production of financial data is incomplete.**

KGaA previously produced financial information in response to Merck's request for "[d]ocuments sufficient to show, on a monthly basis, the marginal costs, fixed costs, and profit margins for each of the goods or services sold in the United States by or on behalf of Defendant since January 1, 2006." RFP No. 74 (June 6, 2017). Though there was no end date in the request, the data in KGaA's produced spreadsheets ran only through points in 2016 and 2017.[1] The arbitrary 2016 and 2017 cutoff of the data in the prior spreadsheets was not agreed to by the parties, and falls short of even the August 2018 close of fact discovery. KGaA has not produced any update to that data since its cutoff dates— nearly ten years ago and counting. That KGaA previously produced financial data through 2016 and 2017 does not excuse it from bringing that information up to date. Rule 26(e) rejects such a one-and-done approach.

**B. Supplemental financial information is relevant to the quantum of disgorgement.**

KGaA's prior production of its four spreadsheets underscores the relevance of that data to the disgorgement calculation. Both sides' damages experts used that information

---

[1] The spreadsheets are entitled "US Sales Promotion Summary Reports from 2010 through May 2017," MERCK01023006; "Consumer Healthcare Sales Summary Reports from 2008 through 2017," MERCK01023007; "Total Sales and Revenues from 2008 through 2016," MERCK01023012; and "2016 Legal P&L Total Revenues," MERCK01023026.

to calculate KGaA's profits through the dates provided.  Indeed, the Lanham Act allows a prevailing plaintiff to recover the defendant's profits.  Although Merck need only prove "defendant's sales" in that process, and KGaA then bears the burden to prove "all elements of costs and deductions claimed," both damages experts used KGaA's spreadsheet data to derive the same profits numbers in what KGaA characterized as a "simple arithmetic" exercise.  ECF No. 302 at 11.  Supplemental sales, costs, and deduction data are needed to bring that disgorgement calculation up to date.  *See Walker v. White*, Civ. Action No. 1:06-350, 2010 WL 1872796, at *1 (W.D.N.C. May 10, 2010) (finding profit and loss statements "material where, as here, plaintiff is contending that he is entitled to share in the profits.").

*Thomas & Betts* is instructive on this point.  In that case, the defendant had produced financial data to calculate its net profits through 2006. *Thomas & Betts*, 2010 WL 2400151, at *3-5. In 2010, plaintiff moved to compel an update to that financial information for the intervening four years. With the discoverability of this financial information already established by the prior production, the Court found the requested supplement likewise "clearly relevant."  *Id.* at *3–4.  The Court granted that request, holding that Rule 26(e) required supplementation.  *Id*.

The same applies here.  Merck seeks an update of the same data KGaA produced before.  KGaA attempts to distinguish *Thomas & Betts* because it described the defendant's net profits as "compensatory" damages, not "disgorgement."  ECF No. 311 at 323.  That is a distinction without a difference.  The type of relief calculated from the requested financial information simply does not factor into the analysis.  And even if it did, *Thomas & Betts*' update was for a disgorgement-based damages calculation of the defendant's net profits, same as here. Indeed, the Lanham Act states disgorgement damages are *compensatory*. 15 U.S.C. §1117(a).

Hon. Michael A. Hammer, U.S.M.J.
March 16, 2026
Page 5

Merck requests this relevant data now to efficiently and accurately update its disgorgement damages. Without it, Merck must cite to KGaA's public Annual Reports to show its U.S. sales numbers, but those numbers do not breakdown costs, deductions, or profits specific to the United States. And, because KGaA' Annual Reports aggregate U.S. sales by year rather than by month, the numbers will likely overlap for some of the months in 2016 and 2017 where the experts have already made an initial calculation. KGaA has the data that would avoid these duplications and prove costs and deductions. That is, if disgorgement is to be brought forward accurately and efficiently, KGaA should produce its updated financials.

**C. KGaA's arguments to the contrary contort the record and the law.**

KGaA's assertion that only its "conduct during the time period for which discovery has taken place" matters for damages is wrong as to both the facts and the law. ECF No. 311 at 323.

KGaA's claim that it bears no accountability for the time after fact discovery is contrary to the factual record. ECF No. 320 at 25:18-22, 29:1–3. Fact discovery here focused on exemplary uses around KGaA's 2015 rebranding because that was when its "Merck KGaA, Darmstadt Germany" umbrella brand took off—not when it stopped. Indeed, both sides' trial exhibits lists have examples showing KGaA's continued use of "Merck" in branding well beyond what the present disgorgement calculations capture and into recent years. *See, e.g.*, ECF No. 311 Ex. A at PTX 485, PTX 1250, PTX 1255; Ex. B at DEX 1094-96. As is often the case with uses on the internet and in other contexts, their content may change with time. But KGaA's infringing use of "Merck KGaA, Darmstadt Germany" persists in various permutations long after the close of discovery.

KGaA's representation that Merck has not alleged continuing harm (ECF No. 320 at 30:21-22) is belied by the Pretrial Order.  For example, Merck's Disputed Facts section on liability emphasized the continuing nature of  KGaA's misuses, and the harm it causes Merck. *See, e.g.*, ECF No. 311 at 73 ¶ 72  ("Defendant's intentional illegal use of the 'Merck' name has caused and will cause continue to cause irreparable and ongoing harm to Plaintiffs' trademarks, reputation, goodwill, and business in the future. . . . This harm is ongoing and capable of being repeated.").  In the damages section, Merck stated that its reported disgorgement calculations are understated due to the limited scope of KGaA's prior financial disclosures.  *See id.* at 76 ¶ 4 ("These numbers are limited by the financial data that Defendant produced through fact discovery, and do not reflect additional damages incurred due to Defendant's unlawful rebranding to date.").  These points are not new: Merck has always maintained that KGaA's misuse is continuing.

Further, KGaA misstates the law in arguing that "there is no relevance here because the liability period is what disgorgement is focused on." ECF No. 320 at 29:1–3.  The "liability period" here did not end with the close of fact discovery, and neither does disgorgement.  That is why the established (and sensible) rule in trademark cases is that infringement results in damages "as long as the infringement persists." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) (internal citation omitted); *see also Walker*, 2010 WL 1872796, at *1 (("Rule 26(e)(1) obliges a party to supplement without prompting any damages discovery responses where such alleged damages are the type that would naturally accrue up to and including the time of trial.")).  Because trademark infringement is a continuing wrong, information related to disgorgement is relevant for the entirety of the infringement period. *Garner v. Yarnall*, Civ. Action No. 03-4967, 2005 WL

Hon. Michael A. Hammer, U.S.M.J.
March 16, 2026
Page 7

834870, at *2 (E.D. Pa. Apr. 11, 2005) (Under the Lanham Act, "Defendants' financial information would obviously be relevant to a claim of disgorgement.").

For this very reason, in many intellectual property cases, a defendant's financial records are routinely updated to bring damages forward close to trial. That is often worked out between the parties without motion practice. In the instances where motions were required, this Court has recognized the need for plaintiffs to obtain supplemental financial information in similar cases of continuing wrongs. *See, e.g.*, *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, 821 F. Supp. 2d 681, 697 (D.N.J. 2011), *aff'd and remanded sub nom. Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*, 748 F.3d 1354 (Fed. Cir. 2014) (granting an accounting for plaintiffs to calculate supplemental patent damages for period after jury award); *Mylan Inc. v. Smithkline Beecham Corp.*, No. 10-CV-4809, 2014 WL 3519102, at *3 (D.N.J. July 16, 2014) (ordering accounting to calculate supplemental damages after jury found defendant breached a patent license agreement).

### D. Supplemental production is neither unduly burdensome nor prejudicial.

The supplemental data Merck seeks would not be unduly burdensome for KGaA to produce. It is the same type of data contained in *four* previously-produced spreadsheets. KGaA has that data available: it recently released its U.S. net sales numbers through 2025.[2]

Nor would this production prejudice KGaA; it simply makes KGaA's outdated disclosure current. The requested update would not grant Merck an unfair advantage. It would level the playing field by giving Merck access to data that only KGaA possesses. Nor would it add time to, or otherwise delay, the case. To the contrary, supplementing

---

[2] *See* www.emdgroup.com/en/investors/reports-and-financials.html at FY 2025 *Annual Report* (PDF) p. 413.

before trial would *avoid* delay by enabling an update to KGaA's profit calculation so that the equitable phase can proceed expeditiously.

### E.  KGaA wrongly conflates supplementation of prior discovery with reopening discovery.

Instead of addressing the requested production, KGaA equates it with reopening other discovery to argue the latter would be prejudicial and cause delay. ECF No. 311 at 122. That is incorrect. The starting point for disgorgement calculation under the Lanham Act is KGaA's *own* profits. 15 U.S.C. § 1117(a). As an example of purported other discovery, KGaA mentioned Merck's divestiture of its fertility business. *See* ECF No. 320 at 28:17–20. But that has nothing to do with the disgorgement number. KGaA needs no further discovery to disclose the requested data.

KGaA's conflation of supplementing a prior damages production with reopening discovery is also contrary to this Court's precedent. *Thomas & Betts*, *supra* § B, illuminates the difference. In addition to defendant's updated net profit information, the plaintiff sought discovery on additional products and customers. *Thomas & Betts*, 2010 WL 2400151, at *1. The Court noted the former was grounded in a "prior right to discovery," not a request to reopen it. *Id.*, at *3; *see also Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (rejecting argument that supplementation reopened discovery because plaintiff "had a continuing duty to disclose information . . . even after discovery closed."). The Court distinguished the latter as reopening discovery. *Id.* at *5–6. Merck's request for an update to its a prior right of discovery of KGaA's spreadsheet data is the former, not the latter.

KGaA's cited case, *Raritan Baykeeper, Inc. v. NL Industries*, does not change the analysis. No. 09 CV 4117, 2022 WL 915846, at *2 (D.N.J. Mar. 17, 2022). It falls in *Thomas & Betts'* latter bucket, not the former. In *Raritan Baykeeper,* Judge Shipp (who

also decided *Thomas & Betts*) rejected a request to supplement expert reports with newly conducted product testing because that would introduce a new liability theory.  *Id.* at \*1. *Raritan Baykeeper* did not speak to whether a party must update *previously-produced* information that was already in the case.[3]

Thus, under the plain terms of Rule 26(e), KGaA is required to supplement its previously-produced financial information.

## CONCLUSION

For the reasons above, Merck respectfully requests the Court order KGaA to produce updated U.S. sales and expenses figures to complete its production of "[d]ocuments sufficient to show, on a monthly basis, the marginal costs, fixed costs, and profit margins for each of the goods or services sold in the United States by or on behalf of Defendant since January 1, 2006."  RFP No. 74 (June 6, 2017).

Respectfully,

*/s/ Mark M. Makhail*
Mark M. Makhail

CC: All counsel of record (via email)

---

[3] KGaA also cites *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212 (2020). But that case addresses the proof required to award profits under 15 U.S.C. § 1117(a).  It does not speak to supplemental discovery under Rule 26(e) or otherwise.